## TURNER v. BURTON et al.

No. 14209—Opinion Filed April 8, 1924.

(Syllabus.)

**1. Parent and Child—Gift to Parent— Scrutiny by Equity—Validity.**

Where a child makes a gift to a parent, soon after the child has attained majority, the courts view the transaction with jealousy, and if the gift is made while the dominion of the parent over the child lasts, it is necessary for the parent to disprove the exercise of parental influence by showing that the child had independent advice or in some other way. If the gift was made with the deliberate, unbiased intention on the part of the child to give to the parent, it will stand, but it will not be permitted to stand if attended by parental influences.

**2. Same—Gift Upheld.**

The judgment of the trial court upholding the gift to the parent is not clearly against the weight of the evidence, and is affirmed.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Ethel V. Turner against R. O. Burton and another. Judgment for defendants, and plaintiff brings error. Affirmed.

Pounders & Pardee and E. J. Hicks, for plaintiff in error.

Cheatham & Beaver, for defendants in error.

COCHRAN, J. This action was brought by the plaintiff in error to set aside certain gifts of real estate and personal property, made by her to her mother, on the ground that the gifts were made under undue influence and coercion of her parents . The parties will be referred to herein as plaintiff and defendants, as they appeared in the trial court. Judgment was

rendered for the defendants, from which the plaintiff has appealed.

The plaintiff contends that the judgment rendered is clearly against the weight of the evidence and is contrary to law. We agree with the plaintiff as to the law applicable to this case, and which is stated in Pomeroy's Equity Jurisprudence as follows:

"The transaction may be one of bounty from the child to the parent, soon after the child has attained 21. In such cases the court views the transaction with jealousy, and anxiously interposes its protection to guard the child from the exercise of parental influence. The law on this subject is well settled. A child makes a gift to a parent, and such gift is good if it is not attended by parental influence. A child is presumed to be under the exercise of parental influence as long as the dominion of the parent lasts. Whilst that dominion lasts it lies on the parent maintaining the gift to disprove the exercise of parental influence by showing that the child had independent advice or in some other way. When the parental influence is disproved, or that influence has ceased, a gift from the child stands on the same footing as any other gift, and the question to be determined is, whether there was a deliberate, unbiased intention on the part of the child to give to the parent."

It is necessary to apply the law above stated to the facts in the instant case and ascertain whether the finding of the trial court sustaining the gift, and which is to be considered as a finding that the gifts were made without the exercise of parental influence, and were made in pursuance of the deliberate and unbiased intention on the part of the child to give the property to her parent, was clearly against the weight of the evidence. The testimony favorable to the plaintiff showed that the gifts were procured soon after the child attained her majority, and were made through the exercise of parental influence, and at a time when the child was under the dominion of her parents. That the plaintiff and her parents were members of the Creek Tribe of Indians, and plaintiff received as her allotment 160 acres of land near Bristow; that plaintiff became of age June 29, 1920, and on that date she signed an oil and gas lease on her land which had been previously negotiated by her father, and received a cash bonus of $8,000, which was deposited to her credit in the bank. The child's mother knew that the lease was being negotiated prior to the time the plaintiff reached her majority. Her mother had been looking at residences in Bristow with the intention of having plaintiff buy a residence there when she had reached her majority and had made a sale of the oil lease. The testimony further shows that on June 30, 1920, a real estate man called on the plaintiff for the purpose of selling her a house and lot in Bristow, and induced her to contract for the purchase of a house and lot at an agreed price of $6,000, on which she made a cash payment of $500. Thereafter a deed was executed to this property in the name of the mother, although the plaintiff protested against her mother being named as grantee in the deed. This deed was placed in escrow in the bank until a small balance on the purchase price was paid. As soon as the residence was purchased the plaintiff furnished the same throughout with new furniture, which was paid for out of her money, and this purchase was also induced by the mother. and under her influence and coercion. All of the $8,000 which the plaintiff received as a bonus for the execution of the oil and gas lease on her property was spent in purchasing the home and in furnishing and improving the same. The plaintiff and her family moved from Newby to Bristow and continued to live in the house until July 30, 1921, when the plaintiff was married. Thereafter she and her husband continued to live with her family in this house for five months, when they were ordered to leave the house by the defendants, and the defendants thereupon claimed the absolute title to the residence and the furnishings as a gift from the plaintiff.

The evidence favorable to the defendants shows that at the time of the purchase of the house and lot in Bristow and for some time prior thereto, the family had been living at Newby, where plaintiff's father owned and operated a store. The plaintiff and her sister were attending school at Bristow in 1920, and the plaintiff advised her mother that it was her duty to stay with them at Bristow, so that she and her sister would not have to board while they were going to school, and advised her mother that she was going to buy a home for her at Bristow when her father got the oil lease through, and was going to furnish the same and deed the property to her mother, and give her the furniture; that the father advised against the purchase of the property at Bristow and advised plaintiff to invest the money in farm lands, but the plaintiff insisted that she was going to buy a home and set it up for her mother, so that she could be with the plaintiff and her sister.

Mrs. Burton testified that she was not present when the deed was made and had nothing to do with the deed being executed to her, and that she did not influence her daughter or request her to give the property to her; that after the home was purchased she insisted the old furniture could be fixed up so that it could be used in the new home, but her daughter said she "didn't want any of that old furniture in the new home" and insisted that new furniture should be purchased. The testimony further shows that prior to the time the deed was executed to the property the plaintiff talked to several persons and advised them relative to buying the property. Mrs. Compton testified that she had a conversation with the plaintiff prior to the time the family moved to Bristow in which she said to the plaintiff: "Well, Ethel, you made a deed to this to your mother; when you get married you might want it back," and the plaintiff said: "No, when I get married I am going to marry a man to take care of me regardless of what I have got." Mrs. Ryan testified that early in July, 1920, the plaintiff told her that she had bought a home and deeded it to her mother, and had furnished it and given her the furniture; and the witness said that the plaintiff gave as her reason for doing this, "Because I want my mother to have a home, so if my father don't want to come to Bristow and live, he can stay at Newby where he is". Several other witnesses testified to similar statements. After the property was purchased, the father sold his business and moved to Bristow in order to be with the family.

In view of the conflicting evidence it was the duty of the trial court to weigh the evidence, which he did, and found against the plaintiff. On this appeal it is the duty of this court, to weigh the evidence, which we have done, and since it does not appear that the judgment of the trial court is clearly against the weight of the evidence, the judgment will not be disturbed because of the insufficiency of the evidence.

The plaintiff assigns as error the action of the trial court in refusing to permit the husband of the plaintiff to testify relative to a conversation which Mrs. Burton alleged she had with him. The plaintiff contends that the husband was a competent witness to testify to this particular conversation and that it was error to exclude his testimony. It is unnecessary to determine whether the husband was a competent witness and should have been permitted to testify in regard to this transaction, because,

as we view the testimony given by Mrs. Burton, this evidence was introduced for the purpose of showing that the plaintiff admitted that she had given the property to her mother. There is no doubt about the property having been given to Mrs. Burton by the plaintiff, and the only real issue in the case was whether the gift was freely and voluntarily made, or was made under the influence and coercion of the plaintiff's parents. On this issue the statement made by plaintiff's husband had no bearing, and the offer made by the plaintiff to prove by him that such conversation did not take place was immaterial.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, LYDICK, and WARREN, JJ., concur.