**KEENAN, Gdn., v. SCOTT et al.**

No. 13137—Opinion Filed April 22, 1924.

**1. Deeds—"Mental Capacity."**

The capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. Miller v. Folsom, 49 Okla. 74, 149 Pac. 1185.

**2. Same—Sufficiency of Incapacity.**

It is the general concensus of judicial opinion that mental incapacity, whether it be due to mere weakness of mind or actual insanity, is not in itself a sufficient basis for obtaining the cancellation of a written instrument, unless the state of idiocy or imbecility complained of is such that it rendered the afflicted individual incapable of understanding the nature and effect of the transaction at the time the instrument was executed. 4 R. C. L. p. 503, art. 17.

**3. Insane Persons—Burden of Proof of Insanity.**

In all civil actions it is generally held that the burden of proof of insanity rests upon him who alleges insanity, or seeks to avoid an act on account of it, and it devolves upon him to establish the fact of insanity by a preponderance of the evidence. If, however, a previous state of insanity is proved, the burden of proof is then usually considered to shift to him who asserts that the act was done while the person was sane; however, it has frequently been held that insanity which is not shown to be settled or general as contra-distinguished from a mere temporary aberration or hallucination

will not be presumed to continue unless the contrary is shown. 14 R. C. L., p. 622, art. 74.

### 4. Appeal and Error—Equity Case—Conclusiveness of Findings.

(a) In an equitable action the findings of the trial court should be sustained unless it appears that his findings are clearly against the weight of the evidence.

(b) The findings of the trial court should be strongly persuasive, and should not be set aside unless this court can say in equity and in good conscience that the conclusions reached by the trial court are clearly against the weight of the evidence.

### 5. Deeds—Proof of Mental Incapacity—Adjudication of Insanity.

An adjudication of insanity of the grantor of a deed, a short time subsequent to the execution of same, may be offered in evidence in an action wherein the deed is sought to be canceled on the ground of incompetency on the part of the grantor at the time of the execution of same, but it is not conclusive of that fact and may be rebutted and overcome by oral testimony of the mental condition of the grantor at the time he executed the deed.

### 6. Same—Cancellation Refused—Judgment Sustained.

The facts as disclosed by the record in this case examined, and held, that the judgment refusing to cancel the deed in controversy on the ground of incompetency on the part of the grantor is not against the weight of the evidence, and the judgment will not be disturbed.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Cherokee County; J. H. Jarman, Judge.

Action by Bruce L. Keenan, as guardian of Motto Ross, against D. O. Scott and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Bruce L. Keenan, for plaintiff in error.

Vance & Bliss, for defendants in error.

Opinion by JONES, C. This case was instituted in the district court of Cherokee county, Okla., by the appellant, Bruce Keenan, guardian of Motto Ross, plaintiff in the lower court, against D. O. Scott and E. C. Thorne, now deceased, and the case has been revived in the name of A. O. Kirkwood, administrator, appellee, defendant in the lower court. Originally two suits were instituted by the appellant, one against D. O. Scott, the other against E. C. Thorne; the cases were consolidated in the district court and tried as one, and the trial court rendered judgment in favor of the defendants and

against the plaintiff, from which judgment the plaintiff duly appeals. The facts as disclosed by the record show that Motto Ross, a Cherokee Freedman, and now the ward of the guardian, Bruce L. Keenan, made, executed, and delivered a warranty deed to the 4th day of August, 1919, to the appellee, D. O. Scott, conveying to the said Scott ten acres of land for a consideration of $250 and on the 7th day of August, 1919, he made, executed, and delivered a warranty deed to E. C. Thorne, appellee, conveying ten acres of land, for a consideration of $300, and on the 11th day of August, 1919, he made, executed, and delivered a warranty deed to the appellee, E. C. Thorne, wherein he conveyed a tract of 24 acres of land for a consideration of $140. These transactions occurred at Tahlequah, in Cherokee county, Okla., and following the last transaction of August 11th, it seems from the record, the said Ross went to Muskogee, Okla., and while the evidence does not specifically show this fact, we infer from the record that on the 12th day of August, he became engaged in a difficulty with another negro, whom he killed, and on the 13th day of August, according to the record, he was arraigned before two doctors, named A. C. Gregory and A. L. Stock, whom we assume were members of the board of insanity for Muskogee county, although the record does not disclose this fact, and by said doctors the said Motto Ross was declared to be insane, and on the 14th day of August, 1919, the county court of Muskogee county made and entered its judgment based on the investigations had on the 13th day of August, 1919. And the report thereof adjudging the said Motto Ross to be insane, and on the same day the record shows he was lodged in the State Insane Asylum at Norman, Okla., and thereafter these suits were instituted by his guardian asking for the cancellation of the deeds heretofore referred to for the reason and upon the grounds that the said Motto Ross was insane and incompetent for the purpose of transacting business such as the execution of warranty deeds conveying title to his land, and specifically urges that the said Motto Ross was insane at the time of the execution of the deeds in controversy on the 4th, 7th, and 11th days of August, 1919, which allegations were specificaly denied by the defendants, appellees herein, and upon this issue the case was tried and resulted in judgment for the defendants as heretofore stated.

Appellant sets forth numerous specifications of error, but the errors alleged in the argument found in briefs are directed to the question of the insufficiency of the evidence to justify the judgment of the trial court

in sustaining the validity of the deeds, and in finding that there was not sufficient evidence to justify the court in adjudging the said Motto Ross to be insane or incompetent on the days upon which the deeds were executed and delivered, and further alleges that the court erred in rejecting certain evidence offered by the plaintiff in the trial of the case.

The evidence as disclosed by the record showed that Motto Ross was about 25 years of age, that he had been drafted in the service of the United States Army, and rendered service in France, and had been discharged on July 12, 1919, and returned to his home at Tahlequah a few days thereafter and immediately entered upon his former duties as porter in the barber shop under his old employer, W. F. Hibbard, who has known Ross for about 14 years and for whom Ross had worked as porter for a period of about 18 months just prior to entering the service. Ross seems to have worked in the barber shop as porter from the time of his return to Tahlequah until his departure for Muskogee which was subsequent to the execution of the deeds in controversy and either on the 11th or 12th of August, 1919, Hibbard testified that he detected no symptoms of insanity or changes of any kind in the mentality of the said Ross, that he seemed to be the same old Mott that he was prior to his entry into the United States Army. A number of other witnesses, including the notary public who prepared the deeds, and took the acknowledgments of the said Ross testified substantially to the same state of facts, and all denied having noticed any thing in his conduct or conversation which would indicate that he was mentally unbalanced or insane. His brother, Jim Ross, testified that Mott seemed restless and complained of not having a good appetite, and told him that while in France he conversed with parties in this country and knew what was going on, and that since his return to his native heath he had conversed with parties in France, and that he seemed to grow worse and looked and acted crazy. This is practically all of the evidence offered in support of the appellant's contention that he was insane at the time of the transactions here in controversy.

The court found that this proof was insufficient to sustain the allegations of the plaintiff's petition of incompetency, and we think the judgment of the court was correct and is clearly sustained by the weight of the evidence.

The other question complained of is the error of the court in refusing to admit the introduction of certain evidence offered on the part of the plaintiff, which consisted of a report issued by the Adjutant General of the Army based on an application for compensation for Motto Ross which was filed on December 9, 1919, subsequent to the transactions here in controversy. The report shows that an award was granted, giving compensation in the sum of $80 per month, and was made on the 13th day of March, 1920, and shows that the said Motto Ross was at that time suffering from a species of insanity or mental disease, and that he was an incompetent, and gives a brief history or summary of his entry and discharge from the army and of his mental condition. This report in our judgment was not competent evidence, clearly hearsay, and while it might throw some light on the question of the mental condition of the said Motto Ross at the time he executed the various deeds in question and be of some value as a history of the case, it was not the best evidence, and the rejection of same reversible error. The trial court, in fact, had the instrument before him and necessarily advised himself of its contents in order to determine the question of its incompetency and admissibility. But considering the facts as disclosed by the instrument rejected, together with the other testimony offered, it would not be sufficient to make out a case and prove the allegations of plaintiff's petition as to incompetency or insanity on the dates of the execution and delivery of the deeds in question. We gather from the entire record, together with the instrument which was rejected in evidence, the report of the Adjutant General, that no question at all had ever been raised as to Ross's incompetency to transact business, until the episode occurred at Muskogee, evidently on the 12th day of August and subsequent to the execution of the deeds, wherein he killed a negro and the plea of insanity was evidently interposed at a very opportune time; it appears from the record that he has long since been discharged from the insane asylum, and we are inclined to the opinion that the error complained of is not sufficient to justify a reversal of this case, and we therefore recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.