JAYNE et al. v. BATEMAN.

No. 30391. Sept. 22, 1942.

*129 P. 2d 188.*

Frantz C. Conrad and John Staley, both of Oklahoma City, for plaintiffs in error.

Wheeler & Mounger and Chas. D. Scales, all of Oklahoma City, for defendant in error.

DAVISON, J. Maurice Jayne is an incompetent. He was adjudicated such prior to the transactions involved in this action. Leila Jayne is his guardian, and also his wife.

In the latter part of 1937 the Jaynes made a trip from Oklahoma City to Panama City (Isthmus of Panama). Immediately preceding this trip, M. L. Bateman delivered to the Jaynes $1,100 for the purpose of defraying their expenses.

At that time Bateman held an option to purchase some property near Panama City on which there was a mortgage of $150,000. He was endeavoring to procure a loan to liquidate the existing loan and provide additional funds for operations upon the land.

On December 13, 1939, Bateman commenced this action against the Jaynes in the district court of Oklahoma county, alleging in substance that they had falsely and fraudulently represented that Maurice Jayne was the representa-

tive of an English loan syndicate which would make the desired loan on his (Jayne's) approval for loan purposes. That in reliance upon the false representations he (Bateman) paid the Jaynes the $1,100 for expenses to make the above-mentioned trip, and that at or about the same time and as an incident to the contemplated inspection of the property for loan purposes, he himself made a trip for the purpose of meeting the Jaynes in Panama City; that he incurred expenses in the sum of $1,000. He sought $2,100 as actual or compensatory damages and $2,500 as exemplary damages.

On January 25, 1940, a young attorney practicing in Oklahoma county was appointed by the trial court as guardian ad litem for the defendant Maurice Jayne. On February 9, 1940, he filed an answer consisting of a general denial. On April 23, 1940, judgment was entered against the defendants.

Thereafter the defendants, appearing through their present attorney, instituted a proceeding to vacate the judgment. The judgment was vacated on October 18, 1940, and the guardian ad litem previously appointed was discharged. The case was then tried to a jury, which returned a verdict for the plaintiff in the sum of $1,600, upon which judgment was rendered. The defendants present the case for review, appearing before this court as plaintiffs in error. The order of appearance is thus reversed. However, our continued reference to the parties will be by their trial court designation.

The defendants have preserved a number of alleged errors for review. Only one of these need be considered.

The plaintiff as a part of his evidence in chief placed the attorney who had previously been guardian ad litem on the stand, and over the objection of the defendants the attorney was permitted to testify to a conversation between himself and the defendants, Maurice Jayne and Leila Jayne, which conversation occurred during the time that the attorney was acting in a representative capacity.

We have concluded that the conversation was privileged cummunication between attorney and client, and that permitting the attorney to relate the same as a witness for the plaintiff constituted reversible error.

12 O. S. 1941 § 385, provides in part:

"The following persons shall be incompetent to testify: * * *

"4. An attorney, concerning any communications made to him by his client, in that relation, or his advice thereon, without the client's consent."

Statutes of this character are declaratory of the common law and their purpose and effect are determined by reference thereto. 28 R. C. L. 549.

When the young attorney previously mentioned in this opinion had undertaken to act in a representative capacity he contacted the incompetent defendant herein and for the purpose of discussing the litigation herein went to his place of residence.

On or about the 1st of February, 1940, he went to the apartment where the Jaynes lived. He was accompanied by one of his friends whom he was taking home. Respecting the conversation had with the defendant Maurice Jayne, he was permitted to testify that:

"I introduced myself and also my friend and told them I was appointed guardian ad litem by the court to look after their interests and that I had checked the file and found that they had not filed any papers at all, whereupon she called her attorney and went to the telephone and asked about it, and he said he was taking care of the matter, and then he and she were talking, both at the same time, and they both told me how dreary and desolate it was down in the Canal Zone and he said that Mr. Bateman had come up and hung around and finally they had signed a slip of paper to get rid of him and that he was in California and they got this draft and thought they had to go down and look around and they went down there and

couldn't find him and that an army officer told them it wouldn't be a good profitable investment. However, she said the weather was so dreary they didn't go out to the property. She said 'You refer to the loan syndicate,' and said that her husband did not represent a loan syndicate, however, she used to represent one, and that is about all I could get out of her. I told them, however, to get in touch with her attorney and see that those papers were filed, that I was only representing Mr. Jayne."

The plaintiff, in support of the trial court's action in admitting this testimony, suggests that the relationship of attorney and client did not in reality exist.

It is pointed out that the defense of an incompetent may be by and through his general guardian (58 O. S. 1941 § 810), and it is suggested that since there was a general guardian of the incompetent, the trial court should not have appointed a guardian ad litem for him.

This field of inquiry surrounding this suggestion need not be explored in this appeal. There is no present existing controversy about who should protect the rights of the incompetent.

We may assume without deciding that the trial court did an unnecessary act in appointing an attorney as guardian ad litem for the incompetent. The fact remains that it was done. An attorney was chosen on the theory that the legal rights of the incompetent might be thus properly protected in the action. That attorney, clothed with such authority as the court was impowered to vest and acting in his professional capacity, sought and procured an interview with the incompetent. The facts in the case were discussed, the substance of the discussion coming as evidence from the lips of the attorney and over the objection of the incompetent and his wife and general guardian (codefendant in this action).

The plaintiff takes the position that since a third person was present at the time of the consultation, the privilege was thereby waived.

As a general proposition the presence of third parties deprives a conversation between attorney and client of this confidential character and removes the cloak of privilege. Howsley v. Clark, 167 Okla. 371, 29 P. 2d 947. The reason for this general exception is that in order to be privileged the communication by the client to the attorney must be of a confidential character and the law presumes that such a confidential communication would not be made in the presence of a third person. Joy v. Litchfield, 189 Okla. 122, 113 P. 2d 974; 28 R. C. L. 562.

The general exception is not without limitations, and the confidential nature of the communication may be recognized even though a third person was present.

The case of Ratzlaff v. State, 122 Okla. 263, 249 P. 934, is instructive on this point. There the conversation sought to be introduced in evidence was between a complaining witness and a county attorney. It took place in the presence of a deputy sheriff. In disposing of the point it was said:

" . . . It is perfectly clear that the conversation under consideration between the complaining witness and the county attorney in the presence of the deputy sheriff was not openly made but was in the nature of a confidential communication."

If a slight digression may be here permitted, it is worthy of note that the case is also significant in the case at bar in that it recognizes that voluntary employment of the attorney is not essential to the privilege created by law. There the attorney was the county attorney selected by vote of the people for handling the matter concerning which he was being consulted. Here the attorney was selected by the court with a view to consultation on the particular matter.

Returning to the consideration of the presence of the third person and the effect thereof on the question of privilege, it may be noted that in the cited

case the third person was a deputy sheriff whereas in the case at bar the attorney's casual companion had no official capacity. He was merely a companion. Ordinarily the presence of such a person would deprive the conversation of its confidential character. Annotation 53 A. L. R. 369. However, there are particular circumstances in the case at bar which in our judgment preserve the confidential character of the communication.

The client here was an incompetent. He falls within a class of persons whose rights the courts are particularly zealous to protect, and also within a class who are not deemed to exercise the discretion in the management of their affairs that would be exercised by fully competent and ordinarily prudent persons. Furthermore, the client was not the one who selected the scene or determined the circumstances of the conversation. Insofar as the presence of the attorney's companion was concerned, the stage was set by the attorney who created the situation, not only as an attorney, but under special authority of the trial court. Under these circumstances we are of the opinion, and hold, that the presence of a third person, the casual companion of the attorney, did not strip the conversation of its confidential character.

While considering the effect of the presence of third persons we must also view the problem in its relation to the presence of the wife and general guardian of the incompetent. While, in a sense, the assumption by the guardian ad litem of the burden of defending the litigation in behalf of the incompetent was assumed to have relieved the general guardian of that duty, the wife was nevertheless still the general guardian, and as pointed out by the plaintiff was vested by law with the authority to make, and charged with the duty of making a defense in behalf of the incompetent under 58 O. S. 1941 § 810. She was not, therefore, a disinterested third person. In fact, in her representative capacity as general guardian of her husband she was in a sense a client of the attorney appointed as guardian ad litem of her husband. Conversing with the attorney of her husband in that representative capacity, as we must presume she did, we perceive no sound legal reason why her communications to the attorney were not also privileged. To hold that a general guardian whose duty it is to defend the ward cannot talk to an attorney of the ward in a confidential relationship would invoke a strange hiatus in the law. Having acted in a representative capacity in conducting a confidential communication, a most unfair situation would exist if when proceeded against as an individual (as the guardian now is in this case) her otherwise privileged communication could be used against her.

Our recognition of the representative capacity in which Mrs. Jayne acted dispenses with the necessity for extended discussion of plaintiff's assertion that the error under consideration should have been separately presented for review by the incompetent. Plaintiff says that the error cannot be presented as it is in this appeal under a joint assignment of error because the wife is not in a position to complain. He invokes the general rule of appellate procedure that an error jointly asserted must be good as to all those joining in the assignment. Since the error in admitting the confidential communication to the attorney was error as to both, it could be and is properly preserved for review under a joint assignment of error.

Plaintiff also states that the admission of the testimony of the attorney should be excused upon consideration of the harmless error doctrine. He asserts that the testimony was really immaterial and argues that it did not influence the outcome of the case. Our review of the record does not warrant a judicial approval of this position. We shall not lengthen this opinion with an extended discussion of the evidentiary value of the testimony and its possible and probable influence on the

276

jury. It is sufficient to observe that counsel for the plaintiff, versed as they are in the problems that arise in connection with the application of the law, must have known the dangerous ground upon which they were treading in offering testimony of this character. The fact that they assumed the hazard of reversal by offering the witness makes it seem improbable that they themselves deemed his testimony immaterial and of no value in influencing the jury.

For the reasons stated, we are of the opinion, and hold, that the trial court committed reversible error in permitting the attorney to testify as a witness.

Reversed and remanded.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, and HURST, JJ., concur. GIBSON, J., dissents. ARNOLD, J., not participating. RILEY, J., absent.