Mildred McKINNEY, Plaintiff in Error,

v.

Minnie Murray ODOM, Defendant in Error.

No. 38851.

Supreme Court of Oklahoma.

June 27, 1961.

Hal Welch, Hugo, for plaintiff in error.

W. L. Stcger, Durant, for defendant in error.

PER CURIAM.

This appeal involves an action to quiet title to between 900 and 1000 acres of land deeded to Mrs. Louie Collins Murray by her husband before his death more than 30 years ago. This realty is said to have been purchased by him, but part of it—perhaps 240 acres—had been her allotment.

Mrs. Murray and her husband had five adult children, three of whom were living. On August 24, 1955 (before her death on November 26, of the same year) the said Mrs. Murray, while she was 86 years of age, and hospitalized, executed two deeds, covering all of the above mentioned property, to one daughter, the defendant in error, Mrs. Minnie Murray Odom, herein-

after referred to as defendant. It was to establish a claim, and quiet title, to an undivided $\frac{1}{5}$ interest in this realty, that another of said defendant's daughters, plaintiff in error, Mrs. Mildred McKinney (hereinafter referred to as plaintiff), instituted the present action about 3 years later, or on August 21, 1958.

In her petition, plaintiff also prayed the court—as an alternative to cancelling her mother's said deeds to defendant—to decree that said grantee held an undivided $\frac{1}{5}$ interest, in the property described therein, in trust for plaintiff.

Plaintiff pleaded that the deed in question was executed while her said mother was physically incapable of executing a valid conveyance; but at the trial, her counsel disavowed any contention that said grantor was incompetent; and attempted to show that the deeds were executed, either under the undue influence of defendant, or with the intention and understanding that, by said conveyances, plaintiff would obtain an undivided $\frac{1}{5}$ interest in the property.

At the trial before the court (without a jury), it was established that the defendant was the only one of Mrs. Murray's sons or daughters that had always lived with her; that when the old family home burned about 1942 or 1943, the defendant, her husband, and her son, all moved, with Mrs. Murray (who was then in her seventy's), to the home of the latter's sister, Miss Maud Collins, who was 10 years younger than Mrs. Murray, and is referred to throughout the testimony as: "Aunt Maud".

About 5 years later, Miss Collins fell and broke her hip and had to be hospitalized. During this period of hospitalization, as well as later ones, and at almost all other times, defendant looked after both her mother and "Aunt Maud". With her earnings as a school teacher, defendant purchased most of the furniture used in Aunt Maud's home, which was located about one mile south of Colbert, between that town and Calera. She also had installed there, an electric water pump, and purchased the butane used as fuel in the home, as well as

most of the groceries. On some occasions when she was away from the home, defendant hired a woman to assist the two ladies; but she testified that, for 15 years, she had no vacation on account of her care of these two women. Also defendant used her automobile, in shopping for the home, and in transporting her mother to Denison, Texas, on shopping trips, and to a hospital there, and to one at Sherman, Texas.

The deeds in question here were executed in the latter city's Wilson N. Jones Hospital, during Mrs. Murray's next to the last period of hospitalization. The previous day, on August 23, 1955, while both plaintiff and defendant were visiting their mother's hospital room, a will, drawn the same day by a Sherman law firm, was brought to her, and she signed it. Said will provided for the devise of the realty involved here (as the "residue" of her estate) to plaintiff, defendant, and Mrs. Murray's only living son, Robert, in equal shares. It is this circumstance, contrasted with Mrs. Murray's execution, on the next day, of the deeds, conveying *all her said property* to defendant *only,* that plaintiff emphasizes and strongly relies upon, to support her theory.

At the trial there was a conflict between plaintiff and defendant's evidence as to some of the circumstances pertaining to the will. For instance, on the basis of plaintiff's testimony, it would appear, that the will was defendant's idea, or that she took the initiative in attempting to obtain its execution. That, and the testimony of plaintiff's witness, a hospital nurse trainee, named Mrs. Vestal, was consistent with other testimony given by plaintiff concerning the two deeds, executed the next day, and conversations had thereafter. Plaintiff testified that, when, on August 25th, the next day after her mother's execution of the deeds, plaintiff asked her, in her hospital room, and in the defendant's presence, if she signed the deed " * * * to beat me out of everything", Mrs. Murray replied that she thought " * * * it was made out to all of you." When asked what defendant said on that occasion, plaintiff testified, in substance, that defendant said

she thought that only part—not all—of the land "was put in her name". Plaintiff further testified that defendant made the same, or similar, admissions on other subsequent occasions; and that she expressly recognized, in those conversations with her, that plaintiff had, and was entitled to, an interest in the property " * * * the same as * * * " she (defendant).

In her testimony, defendant admitted that she had never told anyone that she was claiming all of the real estate, to the exclusion of plaintiff and her brother; but she denied that her mother deeded it to her to divide with (or in trust for) the other two; and, among other things, testified that, while she was in Mrs. Murray's hospital room on the day that plaintiff, with her husband and son, had gone from there to the law firm's office to procure the drafting of the will, Mrs. Murray told her that she would " * * * go on and sign * * * " the will (when presented to her) " * * * to keep a disturbance down".

At the close of the evidence, the trial court rendered judgment for the defendant; and plaintiff has lodged the present appeal.

For reversal, plaintiff contends that the burden was on the defendant to overcome a presumption that the deeds were obtained from the parties' mother, Mrs. Murray, through undue influence; that defendant made no effort, and wholly failed, to sustain such burden; and, that, therefore, the trial court's judgment in her favor was contrary to both the law and the evidence.

■■ The first of the above contentions is based on the premise that the evidence unquestionably shows that the relationship between defendant, the deed's named grantee, and her mother, the grantor, was one of confidence and trust, and that defendant, because of her mother's age and weakened physical and mental condition, was the dominant party in this relationship. Among other cases, plaintiff cites to support her position, she quotes the fourth editor's headnote (referring to it as "the fourth paragraph of the syllabus") in Antle v. Hartman, 193 Okl. 524, 145 P.2d 756, 757.

Said headnote was formulated from a certain portion of the opinion showing that the grantee of the deed involved was not the mother—grantor's only daughter; that the deed covered all of the grantor's property of substantial value; and that it was given for no other consideration than love and affection, and perhaps appreciation for care and filial attention. There this court said:

"* * * Under these circumstances the law requires that the court should closely scrutinize anything done by the grantees to secure the deed in question, *and the burden is on the grantees to overcome the presumption that the gift was secured through undue influence.*" (Emphasis ours.)  · .

Our holding in the quoted case was, in effect, that there was no such "undue" influence in that case, and, in addition to the above, we said:

"* * * As stated in Broeker v. Day, supra, not all influences will avoid a deed. Influences which arise out of the affection, confidence and gratitude of a parent to a child and inspire a gift are natural and lawful influences and will not render such a gift voidable. It is only when influences have been such as to confuse the judgment and control the will of the grantor that they become undue influences.

* * * *. * * *

"The defendant * * * had cared for the grantor a number of years. Plaintiff, * * * was forced to live away from the mother. To avoid the natural acts of an appreciative parent under· these circumstances would be most unnatural. * * *.*"

In the latest case that has come before this court, involving a conveyance of a substantial part of her property, by a mother, while ill in the hospital, to only one of her several children, Higgins v. Pipkin, Okl., 360 P.2d 231, this court, after finding no evidence of the "confidential" relationship and undue influence (said in the rule, plaintiff contends for, to have placed the burden of proof on defendant) cited, as. "controlling", the Antle case, supra, and Wills v. Dissing, Okl., 356 P.2d 339, where we held that a confidential relationship does not necessarily arise from the relationship of parent and child. The latter statement applies to marital relationships, as well as to those of consanguinity, and to testamentary devises, as well as to deeds executed in contemplation of death, as indicated by Holliday v. Holliday, Okl., 327 P.2d 456 at page 462, where we said:

"In view of the foregoing, we hold that, under the circumstances of this case, appellee did not have the burden, because of her marital relationship with the testator, of proving the negative of the 'undue influence' issue.

* * * * * *

"We agree with the trial court that the evidence was wholly insufficient to establish the affirmative of that issue."

Here, as in the above-cited cases, on the basis of the undisputed evidence, it was. only reasonable and natural for the subject deed's grantee to have a place in the grantor's affections, and a reasonable expectation to her bounty, superior to that of the plaintiff. Because Mrs. Murray's debt and obligation to this daughter for having devoted so much of her life to her, was far greater than her obligation to either plaintiff, or to her son, Robert, it is not surprising, unusual, or unnatural that she preferred defendant, over the other two, in disposing of her worldly goods.

Furthermore, there is virtually a total absence of evidence in the record tending to show that defendant assumed the initiative in causing the deeds to be drafted, executed and delivered, or that, in this matter, her mother's will was, in any respect, whatever, subservient to hers, or that it was not wholly free and independent.

The evidence furnishes a plausible explanation of Mrs. Murray's apparent inconsistency in deeding all of the property to defendant the next day after executing a will devising it to *all* her living children

in *equal* shares; the record overwhelmingly supports the conclusion that it was the deeds, rather than the will, that spoke her true, and voluntary, desire in the matter.

■ From a careful examination of all of the evidence pertinent to the issue, we have concluded that, if defendant ever had the burden of negating an "undue influence" presumption, that burden was amply discharged by the overwhelming weight of the evidence.

Nor does the fact that, although Mrs. Murray signed the deeds, in a Sherman, Texas, Hospital, they bear Bryan County, Oklahoma, acknowledgments, have, in and of itself, and without any explanatory, or clarifying, evidence, any particular significance on the "undue" influence issue.

Plaintiff's brief says she advanced the theory that the deeds conveyed an undivided ⅕ interest, in the lands covered thereby, in trust for her, because of Mrs. Murray's above-quoted statement to her, in defendant's presence, to the effect that she thought " * * * all (three) of you (her children) * * *" were named grantees in the deeds. In view of Mrs. Murray's aforementioned desire " * * * to keep a disturbance down * * *", it is reasonable to believe that this may have been no more than an attempt to avoid plaintiff's wrath or displeasure. At any rate, under the rules governing plaintiff's burden of proof, such a remark, especially when weighed against the rest of the evidence, is wholly inadequate to discharge that burden.

In this appeal, as in Gaines v. Gaines, 207 Okl. 619, 251 P.2d 1044, 1047, plaintiff is confronted with two well-established rules of law. As therein described, one is

" * * * with reference to the burden and quality of proof required to establish a resulting trust, and secondly that in cases of equitable cognizance the judgment of the trial court that plaintiffs have not met their burden of proof will not be set aside unless clearly against the weight of the evidence. * * *."

Here, as in the instance of the assignment involved in that case, the deeds to defendant were without any restriction, limitation, or qualification, whatever, on their face. There, the court further said:

" * * * With reference to the proof required to establish a resulting trust, by parol evidence, in contradiction of a valid conveyance, this court said, in Fibikowski v. Fibikowski, 190 Okl. 152, 121 P.2d 304, 307:

" 'The attempted contradiction of a valid devise, like an attempt to impeach a validly executed deed as proof of the transfer of both the equitable and legal title to real estate, is not favored by the law. The presumptions to be indulged are in favor of a complete grant, and a high standard of proof is required to overcome such presumptions. In connection with the creature of equity by which plaintiff attempts to accomplish such an object, the following was said in Babcock v. Collison, 73 Okl. 232, 175 P. 762, and quoted with approval in Gaines v. Gaines, 176 Okl. 576, 56 P.2d 869, 873:

" ' "A resulting trust may be established by parol evidence, but the law requires that the proof necessary to establish it should be of the most satisfactory kind. The onus of establishing a resulting trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal, and decisive." ' "

■ In the present case, after thoroughly examining the record, as already indicated, we cannot say, in contradiction of the judgment appealed from, that plaintiff sustained her burden of proof by the kind of evidence required in the above rule, or that said judgment is clearly against the weight of the evidence. It is therefore affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHN-

SON, JACKSON, IRWIN and BERRY, JJ., concur.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.