Robin McSPADDEN, Individually, and as Executrix of the Estate of Anna M. Knight, Deceased, Plaintiff in Error,

v.

John M. MAHONEY, Sr., Defendant in Error.

No. 40815.

Supreme Court of Oklahoma.

May 9, 1967.

Richard L. Wheatley, Jr., Vinita, Robert C. Lollar, Miami, Ralph B. Brainard, Claremore, for plaintiff in error.

Tony Jack Lyons, Pryor, for defendant in error.

HODGES, Justice.

This action was originally filed on January 8, 1962, by Anna M. Knight against John M. Mahoney, Sr. Upon the death of the original plaintiff on May 5, 1962, the cause was revived in the name of Robin McSpadden, individually and as executrix of the estate of Anna M. Knight, deceased.

After rulings on various motions and demurrers, attacking the sufficiency of the petition, an amended petition was filed on August 23, 1962, to which the defendant John M. Mahoney, Sr. responded by answer on October 15, 1962. In this opinion, Robin McSpadden will be referred to as the plaintiff and John M. Mahoney, Sr. as the defendant, the positions which they occupied in the trial court.

The amended petition alleges that Anna M. Knight, deceased, was the owner of a considerable estate in real property; that the plaintiff is the devisee of a portion of this property; that the heirs of the deceased, including the plaintiff, were the owners of the remainder of the property; and that the defendant was wrongfully claiming ownership and possession of this property. The petition then asserts that all of the deeds, except one, by which the defendant claimed title to this property either were forgeries or were executed by the deceased at a time when she did not understand the nature and consequences of her acts. As to the one deed admittedly executed by Mrs. Knight, the plaintiff asserted that the defendant had forfeited any rights acquired by this deed by virtue of recording the deed prior to Mrs. Knight's death, in violation of his express agreement not to do so. The petition further alleged that all of the deeds and an assignment of a mortgage (and note) were void in that they were without consideration and were obtained by the defendant at a time when he was attorney-in-fact for the deceased. For a separate cause of action, the petition alleged that the defendant had acted as attorney-in-fact for Mrs Knight from March 28, 1957, until December 16, 1961, under a written power of attorney; that, during this period, he had collected rents and made disbursements for Mrs. Knight without rendering a proper accounting; that the defendant had breached his fiduciary responsibilities to Mrs. Knight; and that the plaintiff was entitled to an accounting from the defendant.

In his answer the defendant admitted that he was the attorney-in-fact for Mrs. Knight as alleged in the petition but denied any wrongdoing. The defendant asserted that Mrs. Knight was fully competent at the time the questioned deeds and mortgage assignment were executed, and that the various properties were conveyed to him as valid inter vivos gifts, subject to the retention of life estates therein by Mrs. Knight. The defendant denied that Mrs. Knight had ever repudiated any of these gifts, while she was competent, but, on the contrary, had ratified and reaffirmed the gifts on numerous occasions. He further averred that Mrs. Knight was a capable business woman until she became incompetent sometime in 1961, that she had made her own business decisions and kept her own books during the period that he possessed authority to act under the power of attorney, and that he had always given her a true and accurate accounting of all business transacted in her behalf.

The record shows that Mrs. Knight and her husband Henry S. (Sonnie) Knight were both capable, industrious individuals, who accumulated a sizable estate during their lifetimes. Mr. and Mrs. Knight married late in life, at about age 40, and were childless. Mrs. Knight had been an assistant to the postmaster in Vinita, Oklahoma, for many years prior to her marriage, and Mr. Knight had several business interests. The Knights had known the defendant all of his life. Mr. Knight and the defendant's father were close childhood friends and were business partners for many years prior to the death of defendant's father in 1933. The relationship of the Knights and the defendant was quite close, particularly after the death of the defendant's mother in 1948. After 1948, the defendant spent a considerable amount of time with Mr. and Mrs. Knight and often stayed in their home. When Mr. Knight died on March 19, 1957, the defendant made the funeral arrangements and assisted Mrs. Knight in the administration of his estate. Mrs. Knight was ap-proximately 82 years of age at the time of her husband's death. On March 28, 1957, Mrs. Knight executed a general power of attorney naming the defendant as the grantee. She also changed two of her bank accounts to joint tenancy arrangements with the defendant. The defendant drew checks upon these accounts, paid debts incurred by Mrs. Knight, and collected rental payments for her. The defendant also ran errands for Mrs. Knight, usually bought her groceries, mowed her yard, and generally assisted her in numerous other respects. The deeds involved in this dispute were executed on April 6, 1957, on April 9, 1957, and on October 15, 1958. The mortgage was assigned to the defendant on July 5, 1957, and secured the payment of a note from R. W. Palmer in the face amount of $25,000.00. This note had been transferred to the defendant by Mrs. Knight shortly before the assignment of the mortgage. The relationship of Mrs. Knight and the defendant continued to be very amiable until the latter part of 1960 when Mrs. Knight began to evidence dissatisfaction with the defendant. On December 16, 1961, the defendant's power of attorney was revoked, and on January 8, 1962, suit was filed to cancel the deeds and the mortgage assignment. On January 13, 1962, Mrs. Knight's deposition was taken at her home in Vinita. After Mrs. Knight's death, this cause was revived by the plaintiff, a great niece of Mrs. Knight who resided in Santa Barbara, California. At the time of the trial, the defendant, who was married and had two children, was 40 years of age.

After hearing a considerable amount of evidence, the trial court on December 28, 1962, rendered judgment for the defendant. The trial court specifically found that Mrs. Knight was competent from March 28, 1957, until sometime during the spring or summer of 1961; that the deeds and the mortgage assignment were not procured by fraud, duress, undue influence or coercion, but were valid inter vivos gifts from Mrs. Knight to the defendant; and that the de-

fendant had rendered an adequate accounting to Mrs. Knight for the period when he was acting as her attorney-in-fact. From the order of the trial court overruling the plaintiff's motion for a new trial, the plaintiff has perfected this appeal.

The first issue to be considered on appeal concerns Mrs. Knight's mental competency. It is the position of the plaintiff that Mrs. Knight was incompetent on the occasions when the deeds were executed to the defendant, but that she was competent at the time of her deposition in January, 1962. The defendant, on the other hand, contends that Mrs. Knight was competent at all times until the spring or summer of 1961 when she became incompetent and remained so until her death. The evidence supports the defendant.

It conclusively appears that Mrs. Knight was mentally competent on all occasions when the instruments involved in this dispute were executed. Mrs. Knight was over 80 years of age at the time of the conveyances to the defendant, but numerous witnesses, including her family physician, her attorney, and several close friends testified that Mrs. Knight was completely normal and rational at all times in 1957 and 1958. Several witnesses testified that Mrs. Knight was a capable business woman and was well aware of the fact that she was making a gift of her property to the defendant. In fact, not one witness for either the plaintiff or the defendant gave testimony that would cast the slightest doubt upon Mrs. Knight's competency at any time prior to 1960.

We have previously held that advanced age and reduced mental processes will not invalidate a gift where the donor is competent to understand the nature and effect of the transaction. Anselman v. Oklahoma City University, 197 Okl. 529, 172 P.2d 782. In view of the undisputed testimony, the trial court correctly found Mrs. Knight to be mentally competent upon the dates of the conveyances to the defendant.

The evidence concerning Mrs. Knight's competency during the two years preceding her death is in conflict. The plaintiff called four lay witnesses who testified that, in their opinion, Mrs. Knight remained competent until her death. In addition there is a presumption favoring sanity. Metropolitan Life Ins. Co. v. Plunkett, 129 Okl. 292, 264 P. 827; Keenan v. Scott, 99 Okl. 63, 225 P. 906. However, we believe that the weight of the evidence is contrary to the testimony of plaintiff's witnesses and is sufficient to overcome the presumption of sanity. Testimony from several lay witnesses supports the conclusion that Mrs. Knight was not competent during the last several months of her life. This testimony indicates that she did not recognize her friends on several occasions, was often unable to converse coherently, attempted to sell property for half of its value, and erroneously thought that she had stacks of money around the house. The defendant testified that Mrs. Knight's attitude toward him began to change "following one of her spells in late 1960," that her condition both physically and mentally began to deteriorate rapidly from that time; and that she was seriously ill in December, 1961, when she revoked his power of attorney. Ester White, a registered nurse, testified that she had observed Mrs. Knight on 12 or 14 occasions during her last two years and would characterize her as "senile". Dr. W. R. Marks, Mrs. Knight's family physician, testified that Mrs. Knight suffered from a heart disease with other complications and that her condition gradually deteriorated as she got older. It was his opinion that her reasoning processes were affected by the heart condition and he stated that on some occasions (but not at all times) in the latter half of 1961 and in 1962, she was erratic, confused, and irrational. Dr. P. L. Hayes, a psychiatrist, testified as an expert witness and expressed the positive opinion that Mrs. Knight was suffering from advanced senile dementia at the time of her deposition, and that this condition had existed for quite sometime becoming progressively

worse. He stated that even though Mrs. Knight might appear normal at certain times during this period she was not and could not act rationally. This court adheres to the rule that the finding of the trial court on the question of competency will be reversed only where it is against the clear weight of the evidence. Wills v. Dissing, Okl., 356 P.2d 339; Matthews v. Acacia Mut. Life Ins. Co., Okl., 392 P.2d 369. The evidence in this case amply supports the finding of the trial court that Mrs. Knight was incompetent from the summer of 1961 until her death.

The testimony of Mrs. Knight contained in her deposition is evidence in itself that she was not competent. It is replete with inconsistencies, contradictions, and inaccuracies. Even if the trial court had made no finding concerning competency, we should attach little, if any, probative value to the testimony contained in this deposition.

■ The plaintiff also alleged that the questioned deeds were not executed by Mrs. Knight. The evidence is overwhelmingly to the contrary.

Each of the persons who signed as a witness or as a notary public upon the deeds testified that Mrs. Knight personally signed each document. The testimony of Mrs. Knight's attorney was to the same effect. The defendant also introduced, by stipulation, the opinion of William H. Quakenbush, a handwriting expert, that Mrs. Knight's signature on each document was genuine based upon a comparison with known samples of her signature. The only testimony to the contrary was contained in Mrs. Knight's deposition, taken at a time when she was incompetent, in which she denied signing each of the deeds involved in this dispute. The trial court correctly found that the deeds were not forgeries but bore the genuine signature of Mrs. Knight.

The primary ground upon which the plaintiff relies for reversal is that the defendant was guilty of fraud and undue influence in procuring the execution of the deeds and the mortgage assignment.

■ There is no dispute as to the existence of a confidential relationship between the defendant and Mrs. Knight at the time of the purported gifts. In such circumstances, there is a presumption of fraud and undue influence, and the burden of establishing the fact that no advantage was taken of the alleged donor is upon the fiduciary. Cummings v. Garris, Okl., 362 P.2d 1106; Woodside v. Mullen, 192 Okl. 480, 136 P.2d 871; Weitz v. Moulden, 109 Okl. 119, 234 P. 583. In our opinion, the evidence of the defendant is sufficient to sustain this burden of proof.

■ A primary consideration in such cases is whether the alleged donor had the benefit of independent advice prior to making the purported gifts. The following view is expressed in 38 C.J.S. Gifts § 65 f, p. 865:

"The burden of overcoming the presumption of fraud or undue influence is usually met by showing that the grantor had the benefit of competent and independent advice of some disinterested third person, and where the circumstances are such that independent advice to the donor is essential to the validity of the gift * * * the burden is on the donee to show that such advice was given."

See also Turner v. Burton, 101 Okl. 251, 225 P. 368; Zwirtz v. Dorl, 123 Okl. 284, 253 P. 75. In the instant case, it was established that the defendant received advice from an independent source prior to making the conveyances to the defendant. Mr. A., an attorney, testified that Mrs. Knight consulted him in his capacity as an attorney prior to executing the deeds and the mortgage assignment to the defendant. He drafted these documents, discussed their import with her, and supervised their execution in the presence of witnesses and a notary public. He stated that he had known both Mrs. Knight and the defendant for many years, and had business in-

terests in common with the defendant. The attorney denied that the defendant was present or consulted during any of his conferences with Mrs. Knight. He expressed the opinion that no one was exercising control over Mrs. Knight, and stated that there was no suggestion of fraud being practiced or undue influence exerted. He further testified that he prepared, and supervised the execution of, Mrs. Knight's will in which she reaffirmed her previous conveyances to the defendant.

■ It thus appears that Mrs. Knight was thoroughly advised concerning the legal significance of her proposed undertaking prior to the execution of the instruments and their delivery to the defendant. We conclude that Mrs. Knight, having received competent independent advice, conveyed this property to the defendant subject to the reservation of a life estate therein with full knowledge that she was making an irrevocable gift.

■ Under the circumstances presented, we cannot say it is illogical or improbable that Mrs. Knight would make such gifts to the defendant. Mr. and Mrs. Knight were childless and were not particularly close to their relatives. Apparently the plaintiff, who was a great niece and resided in another state, was their favorite relative. The defendant's parents were deceased, and he spent a great deal of time with Mr. and Mrs. Knight. There can be no doubt of the mutual love and devotion between them. The testimony of numerous witnesses who had known Mr. and Mrs. Knight and the defendant for many years supports this conclusion. Following Mr. Knight's death, the defendant assisted Mrs. Knight in both personal and business matters and visited with her frequently. The evidence shows that he visited her almost daily at her home, and twice daily during periods when she was hospitalized. Several witnesses testified that Mrs. Knight spoke often of her love for the defendant and that she looked upon him as being the same as her own son. Included in the record is a hand written letter from Mrs. Knight to the defendant expressing Mrs. Knight's desire that the defendant should have the property involved in this dispute in which she stated, "Henry and I have looked on you as a son." The defendant also characterized his relationship with Mr. and Mrs. Knight as being like father-son and mother-son, and stated that upon delivery of the bulk of the deeds involved in this dispute Mrs. Knight said "John, here is your future and your security." It is perhaps unnecessary to state that "influences" arising from affection and kindness are · natural and lawful and do not render a gift voidable. See McKinney v. Odom, Okl., 363 P.2d 272; King v. Gibson, 207 Okl. 251, 249 P.2d 84.

■ The evidence also established that these conveyances to the defendant were not the result of a sudden impulse but had been planned by Mrs. Knight and her husband, prior to his death. John Cason, Chairman of the Board of the Craig County Bank, stated that about 30 to 60 days after Mr. Knight's death, Mrs. Knight came to his bank to change her account to a joint tenancy arrangement with right of survivorship in the defendant. His testimony, in part, is as follows:

"As I recall, Mrs. Knight started the conversation by remarking about the fact that John's (defendant's) father and Sonnie (Mr. Knight) had been in business, oh, in business together or something of that nature years before, and she remarked that when Sonnie had died that he had wanted what he had to go to John. * * * And she said that she wanted to do the same thing, She asked me to get the signature card, make a new signature card rather, with hers and John's name on it."

In addition, several of those persons who witnessed the execution of the deeds on April 6, 1957, testified that Mrs. Knight stated, at that time, "(t)his is the way

Sonnie wanted it and this is the way it should be." The witnesses on this occasion and to the other deeds and the mortgage assignment all testified that, in their opinion, Mrs. Knight was acting voluntarily and appeared pleased with what she was doing.

Subsequent documents signed by Mrs. Knight are further evidence of the validity of these gifts. In 1959 Mrs. Knight and the defendant executed certain leases and a pipe line right of way agreement covering portions of the property involved in this dispute wherein Mrs. Knight was designated as a life tenant and the defendant as the remainderman. They also jointly executed a partial release of the Palmer mortgage on February 21, 1959. Witnesses to these documents expressed the opinion that they were voluntarily signed by Mrs. Knight.

 The plaintiff points out that the deeds were not recorded by the plaintiff for over four and one-half years and contends that this is a suspicious circumstance. The defendant testified that Mrs. Knight had reserved a life estate in the property, and he saw no reason to record the deeds, but that after Mrs. Knight became incompetent, he recorded the deeds upon the advice of an attorney. The fact that recordation of the deeds was delayed does not vitiate such deeds if all the elements of a gift inter vivos are present as hereinafter discussed. The plaintiff also emphasizes on appeal the fact that the defendant failed to file federal gift tax returns for the property received from Mrs. Knight. We attribute little significance to this.

 In this case all of the elements of a gift inter vivos are present. They are: (1) intention to give; (2) complete delivery of the thing given; and (3) acceptance by the donee. Foster v. Rose, 205 Okl. 397, 238 P.2d 332; Fouts v. Nance, 55 Okl. 266, 155 P. 610, L.R.A. 1916E, 283. While in the instant case the donor was an aged widow and the donee

was her attorney-in-fact, this does not preclude the possibility of a valid gift where the evidence clearly establishes a gift was intended by the donor and there was no evidence of misconduct by the donee. See Montgomery v. Willbanks, 198 Okl. 684, 181 P.2d 240; Wills v. Dissing, Okl., 356 P.2d 339; Antle v. Hartman, 193 Okl. 524, 145 P.2d 756. As discussed above, the undisputed evidence herein establishes that the donor was competent and looked upon the donee as her son, that the gifts were in accordance with plans previously formulated by the donor and her deceased husband, and that the donor had the benefit of the independent advice of her attorney prior to making the gifts. Further there is a total absence of evidence of wrongdoing on the part of the donee. We therefore conclude that the evidence is clear and convincing in support of the finding of the trial court that the deeds and the mortgage assignment were valid inter vivos gifts to the defendant.

 The plaintiff next asserts that the property described in the deed of October 15, 1958, reverted to Mrs. Knight because the defendant violated a condition of their agreement by putting the deed on record prior to her death. The defendant testified that he orally agreed to pay all oil royalties from the property to Mrs. Knight during her lifetime (and this agreement was kept) but that there was no agreement restricting his right to record the deed. In any event, where a deed is not uncertain in meaning, parol evidence is inadmissible to prove an intention different from the terms of the deed. Johnson v. Butler, 206 Okl. 632, 245 P.2d 720; Cutright v. Richey, 208 Okl. 413, 257 P.2d 286. The language of the instant deed is plain and unambiguous and contains no restrictions or conditions upon the conveyance to the defendant.

 The plaintiff also demanded an accounting from the defendant. The uncontradicted testimony of the defendant was that he orally accounted to the plaintiff for all monies expended and received in her

behalf and that she expressed complete satisfaction with his conduct. The defendant further stated that Mrs. Knight made her own decisions, that he carried out her instructions, and that she kept her own written records of financial transactions. The defendant introduced cancelled checks and copies of bank statements from his joint accounts with Mrs. Knight and explained the use that he had made of each substantial withdrawal from these accounts. Most of the funds were expended in the maintenance, repair, and improvement of Mrs. Knight's property. Other funds were used by the defendant to purchase property in Mrs. Knight's name in compliance with her instructions.

The evidence also disclosed that Mrs. Knight had made substantial monetary gifts to both the plaintiff and the defendant following her husband's death. The defendant testified that he received government bonds valued at $10,000.00 from Mrs. Knight in 1957. Charles Goodpaster, assistant postmaster at Vinita, testified that he was present when the change of beneficiary forms for these bonds were executed by Mrs. Knight and that she understood what she was doing and was acting voluntarily. The defendant stated that he also received a $5,000.00 check from Mrs. Knight in a Christmas card in 1958, and a $7,000.00 check from Mrs. Knight on another occasion. In connection with the latter gift, the defendant introduced a hand written letter from Mrs. Knight in which she stated that she was enclosing the check for the defendant and his family "to do as you like with." The plaintiff also acknowledged that she had received monetary gifts in excess of $20,000.00 from her great aunt after Mr. Knight had passed away.

After reviewing the record, we believe the evidence satisfactorily shows that, during the period the defendant acted under the power of attorney, Mrs. Knight was a competent, capable business woman, that she maintained her own records, and that the defendant's accounting was adequate. The record is devoid of evidence that the defendant misused or misappropriated funds belonging to the defendant or abused her trust and confidence in any way.

Finally the plaintiff asserts that the trial court erred in admitting into evidence the testimony of certain witnesses for the defense.

▉▉▉▉ The plaintiff contends that it was improper to allow Mrs. Knight's attorney, Mr. A. and her physician, Dr. Marks, to testify over the plaintiff's objection. 12 O.S.1961, § 385. There can be no doubt that the testimony of an attorney concerning communications with his client is not admissible against the client where the privilege against such testimony is properly invoked. Jayne v. Bateman, 191 Okl. 272, 129 P.2d 188. The same rule applies to the testimony of a physician. St. Louis-San Francisco Ry. Co. v. Kilgore, Okl., 366 P.2d 936. But the privilege to exclude such testimony is not applicable in the instant proceeding. Here both parties are claiming under the deceased, the plaintiff as an heir and devisee and the defendant as a grantee and assignee. In Gaines v. Gaines, 207 Okl. 619, 251 P.2d 1044, a case in which both parties were claiming property under an assignment from the deceased, this court held:

"The rule of privilege between attorney and client does not apply in litigation, after the client's death, between parties, all of whom claim under the same client."

This exception has often been applied in cases in which heirs or devisees of the grantor sued the grantee of a deed for recovery of the property conveyed. Olsson v. Pierson, 237 Iowa 1342, 25 N.W.2d 357; Schultz v. Leary, 123 Ind.App. 100, 106 N.E.2d 705; Eicholtz v. Grunewald, 313 Mich. 666, 21 N.W.2d 914; Forbes v. Volk, Wyo., 358 P.2d 942; and see Annotation, 66 A.L.R.2d § 4, p. 1305. While the cited cases involve the attorney-client privi-

lcge, we perceive no reason for applying a different standard to the physician-patient privilege. This Court has previously recognized that a physician may be compelled to testify by either an heir or a devisee where both are claiming under the deceased. In re Porter's Estate, 208 Okl. 475, 257 P.2d 517. In the Gaines case we stated that the attorney-client privilege did not exist where the parties claim under the same client, and in the Porter case we concluded that the physician-patient privilege "if such existed" could be waived by either party. The distinction is of little consequence for in either event the testimony is admissible. We therefore conclude that the trial court did not err in admitting the testimony of both Mrs. Knight's attorney and her physician.

It is the further contention of the plaintiff that the testimony of the defendant's expert witness, Dr. Hays, was improperly admitted. This witness based his conclusion concerning Mrs. Knight's competency in part upon facts contained in a hypothetical question and in part upon his examination of Mrs. Knight's deposition. The primary basis of the plaintiff's objection is the inclusion in the hypothetical question of certain facts from the inadmissible testimony of Dr. Marks, Mrs. Knight's family physician. As we have previously determined Dr. Mark's testimony was properly admitted, this objection is without merit. Review of the record discloses that the essential facts the expert witness was asked to assume in the hypothetical question are supported by competent evidence. Further, the fact that the expert opinion is based, in part, upon lay testimony as to commonplace and objective facts is not improper. Rogers v. Sells, 178 Okl. 103, 61 P.2d 1018.

As the evidence in this case clearly supports the judgment of the trial court and there were no errors in admission of testimony, the judgment is affirmed.

All Justices concur.