Argued April 8, affirmed May 11, 1966

# TANNER *v.* FARMER
414 P. 2d 340

*Maurice D. Sussman,* Portland, argued the cause and submitted briefs for appellant.

*Edwin J. Welsh,* Portland, argued the cause for

respondent. With him on the brief was Edward I. Engel, Portland.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, DENECKE and LUSK, Justices.

SLOAN, J.

On October 4, 1962, Mrs. Marie Abbott was taken to Providence hospital in Portland. On October 6, 1962, she died intestate. Sometime during that interval her grandnephew, defendant Farmer, acquired from her $10,000 in cash. This is an action by the administrator of her estate to recover the money. However, Marie's husband, Wilbur Abbott, was Marie's sole heir, and is the real party in interest. Farmer claimed that he received the money as a gift. The jury agreed with him. Plaintiff appeals. The most extensive part of the argument here is that the court erred in failing to direct a verdict for plaintiff.

■ We think it unnecessary to review the evidence contained in the long transcript. Plaintiff's evidence was largely devoted to an attempt to prove that Marie was incompetent to validly pass title to her property. Much of the evidence involved detailed medical testimony to the extent that disease may have impaired her mental processes. There was also evidence concerning the pro and con of the marital relations of Marie Abbott and her husband. The latter was Marie's second husband. She brought to the marriage considerable wealth. She retained complete control and use of her wealth all during the marriage. There was evidence by Abbott of a peaceful and affectionate relationship. There was other evidence of quarreling. The conflicts in the testimony, the weight to be given much of the evidence and, most important, the credibility

of material witnesses required jury deliberation to resolve. It would have been a clear usurpation of the jury function had the court acceded to plaintiff's motions to take the case from the jury.

One assignment of error which requires discussion is directed at the testimony of an attorney who had advised Mrs. Abbott for several months prior to her death. Plaintiff vigorously attempted to invoke the attorney-client privilege to preclude the attorney from testifying. The attorney was permitted to testify that for several weeks or months before her death Mrs. Abbott had planned to divorce her husband and of her desire to make a will which would deny Abbott any right to her property. Both projects were in the making when Mrs. Abbott died. This evidence was presented by defendant Farmer, along with similar evidence, to show that Mrs. Abbott did not want her husband to have any of her property and that her disposal of the particular $10,000 involved in this case would have been within the intentions she had otherwise expressed.

██ Not much authority has been cited nor found pertaining to the extent of the privilege, after death, to this kind of a situation. It is universally recognized that the privilege does not prohibit an attorney from testifying about the execution of a will. VIII, Wigmore, Evidence (McNaughton Ed 1961) § 2314. In *Bergsvik v. Bergsvik,* 1955, 205 Or 670, 685, 291 P2d 724, this court approved the rule which says that the privilege does not apply to litigation after the death of the client between parties who claim under the client. *Bergsvik* involved the execution of a "Community Property Agreement" between a husband and wife. After the death of both the husband and wife litigation developed over the will of the wife, who had been the last to die. We applied the stated rule to permit the attorney who

had prepared the agreement to testify as to conversation with the husband about the purpose and intent of the agreement.

The Uniform Rules of Evidence propose that the privilege shall not extend "to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by inter vivos transaction." Rule 26 (2) (b) Uniform Rules of Evidence (1954). This is in keeping with the *Bergsvik* decision and with the rule followed by other courts. See McCormick on Evidence (1954), § 98, pages 199, 200.

 Plaintiff relies on *Booher v. Brown,* 1944, 173 Or 464, 146 P2d 71, to support his claim of privilege. In that case Mrs. Booher was claiming property of a decedent by virtue of a contract to make a will. The testimony of an attorney who had prepared two unexecuted wills for the decedent was offered and refused. The privilege was allowed upon the theory that communication to an attorney relative to wills that are not executed is privileged. The more decisive reason stated in the *Booher* decision, however, was that the attorney was called as a partisan witness. 5, Jones, Commentaries on Evidence (2nd ed 1926) page 4108, was cited for the rule that the testator's attorney may not become a partisan witness to establish collateral claims. The *Bergsvik* court referred to the *Booher* decision by merely saying "See also Booher v. Brown [citation]." The *Bergsvik* case impliedly overruled the *Booher* decision. Except for the statement that the attorney may not be a partisan witness to establish collateral claims, the *Booher* decision is now overruled. It was not error to permit the attorney to testify.

 Plaintiff claims the court erred in admitting evidence of the marital relationship of Wilbur and

Marie Abbott. The evidence had some probative value to show Marie's intent, which was important, and the reason why she would desire to make a gift to Farmer. When direct evidence of the question at issue is lacking, in this instance intent and purpose, circumstantial or collateral evidence is admitted if it logically tends to prove the essential fact. 2, Jones, Commentaries on Evidence (1926 2nd ed) § 603, page 1115; 1, Wigmore, Evidence (1940 3rd ed) § 10, page 293, et seq. Few of the gift cases consider this precise question. It is generally held, however, that evidence which describes the background and relationship of the parties is admissible. *Bowline v. Cox,* 1946, 248 Ala 55, 26 So2d 574; 38 CJS, Gifts § 66 (c) page 867. When it becomes necessary to find the uncommunicated intent of a person who later dies, such facts are material and probative.

Our cases involving gifts relate facts, without comment as to admissibility, which explains why a donor would desire or intend to make a gift. See for example, *In re Norman's Estate,* 1939, 161 Or 450, 88 P2d 977; *Reif v. Botz,* 1965, 241 Or 489, 406 P2d 907. It was proper to admit the evidence.

■ It is also claimed that the court erred in admitting a post-nuptial agreement entered into by Mr. and Mrs. Abbott about a year after their marriage and eight years before Mrs. Abbott's death. The document had little probative value. However, the court admitted it for a very limited purpose and so instructed the jury. If there were any error in admitting it, there could have been no reversible prejudice. In view of the other extensive evidence relating to the same issue, the document could have had only insignificant force, if any.

■ There was no complaint as to the careful in-

structions given by the court except for the failure of the court to give an instruction on a subject otherwise covered by the court. It was well explained to the jury about the quality and quantity of proof necessary to establish the gift. The jury found that a gift had been made and there is no available right for a court to reverse that decision.

Judgment affirmed.