The State of Montana ex rel. GEORGE EDWARD ROSS
AND MYRA M. ROSS, Husband and Wife, Relators, *v.* The
DISTRICT COURT of the Fourth Judicial District of the
State of Montana in and for the COUNTY OF MIS-
SOULA and the HONORABLE E. GARDNER BROWN-
LEE, a Judge thereof, Respondents.

No. 11359.
Submitted August 24, 1967. Decided November 20, 1967.
433 P.2d 778.

Wooten & Kidder, Hugh Kidder (argued), Missoula, for relators.

Sherman V. Lohn (argued), Missoula, for respondents.

PER CURIAM:

This is an original proceeding brought in this court on July 21, 1967, at which time a petition seeking a writ of mandamus was filed. Following an ex parte hearing this court directed that an alternative writ of mandamus be issued requiring the respondent judge to honor an affidavit of disqualification and call in another judge to preside in cause 10242, Guardianship of Roland Mark Watson and Darin Scott Watson, pending in the district court of Missoula County, or to appear before this court on the 26th day of July, 1967, and show cause why he had not done so.

On July 24th, the return day was vacated until the further order of the court.

On August 8th, to facilitate our consideration we directed the clerk of the district court in Missoula County to transmit to this court any and all files in the matter of the estates and guardianships of Roland Mark Watson and Darin Scott Watson.

On August 14th, a supplemental petition for writ of mandate was filed.

On August 16th this court assumed jurisdiction of and ordered causes 30510, Ross v. Watson, and A-10242, Guardianship of Roland Mark Watson and Darin Scott Watson, consolidated with this proceeding.

On August 21st respondent district judge filed a motion to dismiss and a motion to vacate. These motions were set to be heard on August 24th.

On the day of the hearing, August 24th, a petition for writ of prohibition or other appropriate writ was filed in this cause by Relator which involved an order issued in cause 10204, Guardianship of Roland Mark Watson and Darin Scott Watson, by the respondent district judge on August 19th, which order was apparently issued for the purpose of requiring an accounting.

Following the hearing on August 24th this court issued an order wherein we assumed jurisdiction over causes 10204, Guardianship of Roland Mark Watson and Darin Scott Watson; A9967, The Estate of Candyce Clair Ross Watson, deceased; 30332, Wrongful Death Action by George E. Ross, Administrator of the Estate of Candyce Clair Watson v. Westmont Tractor Company, et al; and 10571, Wrongful Death Action by Roland Mark Watson, a minor, et al. v. Milo Wilson, et al.; and ordered these additional causes consolidated for the purposes of the court's further consideration. The court further appointed and commissioned Randall Swanberg, Esq., an attorney residing in Great Falls, as special master of this court in this and the consolidated causes with full powers, all as specified in Rule 53, M.R.Civ.P.

The report of the special master was received and filed on October 17, 1967. Because so many action have been consolidated in this cause the court made an order designating who should be considered as "parties." The clerk of this court gave notice of the filing of the report of the special master to all "parties" as specified in the court's order and notified them of their right to file objections in accordance with Rule 53, M.R.Civ.P., within ten days after being served with the notice.

No objections were filed. Relators move for adoption of the Report of the Special Master. In this situation no hearing is necessary and the court has considered the special master's

report, has deleted portions thereof and now adopts the portions thereof hereinafter set forth to-wit: .

"The basic facts of the controversy, so far as they are pertinent to the decision of the matters involved, are as follows: Under date of February 25, 1966, in a divorce action filed in Ravalli County, Candyce Watson was granted a decree of divorce from Roland J. Watson, together with custody of two minor children, Roland Mark Watson and Darin Scott Watson, born September 26, 1962, and November 13, 1964, respectively. Defendant was ordered to pay to plaintiff $100.00 per month for their support, and to pay the usual attorneys' fees and costs. This decree was signed by the Honorable E. Gardner Brownlee, District Judge. The complaint was based upon mental cruelty. From the complaint, and from a report filed with the court by Ravalli County Welfare Department in Missoula County Cause Number 30510, a subsequent action for the custody of these children, it is learned that the parties were married in Salmon, Idaho, on May 16, 1960, at which time Roland was 16 years old and Candyce was 15, and that in June 1960, Roland was apprehended as a juvenile delinquent, the delinquency involving vandalism at a cheese factory, burglary of a home, and arson of a barn. As a result of the hearing on these charges, on June 8, 1960, about 3 weeks after the marriage, Roland was committed to the Montana State Industrial School in an order signed by the Honorable Emmet Glore, District Judge. Candyce continued to live with her parents, Roland was later paroled from the State Industrial School, to Mr. and Mrs. G. E. Ross, parents of Candyce. During the succeeding years it does not appear that either Roland or Candyce had steady employment, and their support, together with that of their children as they came along, was contributed to materially by Mr. and Mrs. Ross. Later, Roland entered the armed forces of the United States, although he was in Montana at the time of the filing of the divorce action, since he admitted service of the summons and complaint. After the di-

vorce, Roland's contribution to the support of his children, required by the decree at $100.00 a month, consisted of a $400.00 payment received from the Army, on October 16, 1966, which came after the hardship discharge of Roland from the Army as hereinafter set forth, such payment leaving him still in arrears under the terms of the decree.

"On June 29, 1966, Candyce Watson was killed in an automobile accident, under circumstances which gave rise to several claims for damages. So far as is material here, these were: (1) claim of the decedent herself, provided she survived an appreciable length of time after the accident, (2) claims on behalf of each of the minor children, (3) claim of Mr. and Mrs. G. E. Ross, parents of the decedent, and (4) claim of the surviving husband Roland. It does not appear that this last claim was ever litigated, but the others were. At the time of the death of Candyce Watson, the children were being cared for by Mr. and Mrs. Ross, and they continued to do so. Because of the death of his wife and the existence of the minor children, Roland was granted a hardship discharge from the army, to assist with the care and support of the children, returned home and lived with Mr. and Mrs. Ross until March, 1967. During that month, or thereabouts, the Selective Service Board, investigating whether or not the terms of Roland's hardship discharge were being carried out, issued a questionnaire, and upon the return thereof, determined that Roland was not assuming the responsibilities of the children, and classified him 1A. Roland appealed this decision and a hearing thereon was set for April 20, 1967.

"On March 24, 1967, he removed the children from the home of Mr. and Mrs. Ross, and on April 22, was married to Janice Maxine Joseph.

"In the meantime, following the death of Candyce on June 29, G. E. Ross, her father, filed a petition for letters of administration of her estate, listing the unliquidated claim for damages for wrongful death as the corpus of the estate, and on

July 18, he was duly and regularly appointed administrator, and letters were issued to him. In this matter Ross was represented by the law firm of Wooten & Kidder, and the order appointing adminstrator was signed by the Honorable Emmet Glore, District Judge. It appears that Ross had retained the firm of Wooten & Kidder through a written retainer agreement, providing for an attorney's fee of 25 per cent of any settlement prior to instituting suit, 33⅓ per cent of any settlement, verdict, or recovery after instituting suit, and 40 per cent if the case was appealed, and the claims involved in said retainer agreement were those for damages sustained by Ross, his deceased daughter and her estate. Suit by the administrator of the estate was not actually filed until February 3, 1967, in Missoula County, where, as to civil actions, the district court of the fourth district is departmentalized.

"At about the same time, a petition was filed, on January 30, 1967, in Ravalli County, asking the appointment of George E. Ross as guardian ad litem of the two minor children, and such an order was signed on the same day, by the Honorable Jack L. Green, District Judge. Thereafter and on February 7, 1967, in Ravalli County, suit for damages was filed by the two minor children through their guardian ad litem, and by George E. Ross and Myra Mae Ross, his wife, on their own behalf, for damages resulting from the death of Candyce Watson. With the filing of this complaint, because the fourth judicial district court is not departmentalized in Ravalli County, Wooten & Kidder filed an affidavit of disqualification of the Honorable E. Gardner Brownlee. Disqualification of Judge Brownlee appears to be a standard practice with this law firm, and considerable friction has developed between them and Judge Brownlee as a result.

"While the two damage suits were pending, and because of the removal by Roland of the children from the home of Mr. and Mrs. Ross, mentioned hereinabove, a complaint was filed in Missoula County on March 29, 1967, by Mr. and Mrs.

Ross against Roland, seeking custody of the children and alleging, inter alia, both the pendency of the damage suit, and the fact that Roland had been reclassified 1A by the Draft Board in Hamilton, intimating that his interest in the children was due to these two facts. Upon this complaint, summons was duly issued and served, as was also an order to show cause (issued upon a separate petition simultaneously filed with the complaint), and signed by the Honorable Jack L. Green, in which temporary custody of the children was vested in Mr. and Mrs. Ross, and Roland was ordered to deliver the children to them at their home in Hamilton. Why this subject matter was not handled in the divorce action in Ravalli County, which would appear to be the normal forum for disposition of the custody of the children, does not appear, but since the equity jurisdiction of the district court is sufficiently broad to encompass a question of the custody of minors as a separate proceeding, it probably is not important. In any event, the complaint for custody, and the petition for an order to show cause were both filed on March 29, 1967, and the order to show cause itself was filed on April 10, after having been served on March 31, 1967. On April 3, the defendant appeared through his counsel, Lyman J. Hall, and among other things requested that the portion of the order to show cause relating to temporary custody be rescinded and that Roland be allowed to keep the children during the pendency of the action. This petition was granted by the Honorable Jack L. Green under date of April 3, 1967. The order to show cause issued by Judge Green set the matter for hearing on April 17, 1967, but under date of April 7, 1967, an order filed April 17 was entered by Judge Emmet Glore continuing the hearing to April 27, with copies of the order to Wooten & Kidder, Lyman J. Hall, and for information, to the Honorable Jack L. Green. Following this, on April 19, appears a minute entry by Judge Glore indicating that the three judges of the fourth district considered themselves disqualified in the matter, and calling in the Hon-

orable James D. Freebourn of the second district to assume jurisdiction. No actual affidavits of disqualification had been filed in this case by anyone, against any of the three district judges. Neither does the minute entry indicate which of the first three subsections of section 93-901, R.C.M.1947, as amended, were the grounds for the three judges deeming themselves disqualified. It appears that Judge Glore informally inquired of the other two judges whether they wanted to assume jurisdiction and upon being answered in the negative, he made the minute entry. While it is clear that a district judge may disqualify himself on his own motion, it is almost equally clear that he should no do so in the absence of a valid reason. 48 C.J.S. [Judges § 93, pp.] 1079-1080. * * *

"Later, the hearing date of April 27, 1967, as set in the order of April 7, was again changed to April 24, 1967, by order dated April 17, and filed April 21. On April 24 Roland filed his answer to the petition, in which, oddly enough, he does not allege his recent marriage, but claims the right to custody of the children principally on the basis that he was their natural father. Trial was had before the Honorable James D. Freebourn on April 24 and 25, in which some 18 witnesses testified on behalf of the plaintiffs, and 7 on behalf of the defendant. The matter was then submitted to Judge Freebourn who, with commendable promptness, filed his findings of fact and conclusions of law on May 29, 1967, in which he found, among other things, that both Roland Watson and Mr. and Mrs. George Ross were fit and proper persons to have custody of the minor children, and held that the right of the natural father to custody of his children was superior to that of the grandparents. Accordingly he awarded custody to Roland. Upon these findings of fact and conclusions of law, judgment was entered on the same day.

"Thereafter, and on June 6, 1967, the plaintiffs filed a motion for a new trial on the grounds of newly discovered evidence, to the effect that Roland had been inducted into the

armed services as of May 31, 1967, and several other contentions, most of which are conclusions of law rather than actual grounds for a new trial. Simultaneously with the filing of their motion for a new trial, plaintiffs filed an affidavit of disqualification of Judge Freebourn. Thereafter, on June 26, 1967, and prior to the hearing on the motion for a new trial, a second affidavit of disqualification was filed by Ross against Judge Freebourn. Both of these affidavits of disqualification are in the words of section 93-901, as amended by the Legislative Session of 1965.

"While all this was going on in the custody suit, the two damage suits hereinabove referred to had been in the process of negotiations for settlement. We have already seen that George E. Ross had been appointed administrator of the estate of Candyce Watson, and guardian ad litem of the two children for the purposes of the damage suit in Ravalli County. With settlement of the damage suits imminent, and the suit for custody of the children pending, George E. Ross and Roland Watson quite sensibly arrived at a compromise agreement in order that settlement of the damage suits be not delayed, and they jointly petitioned the Missoula County Court for appointment as joint guardians, dating the petition April 24, 1967, the same day the custody suit came on for trial, and filing the same on May 9. At the same time Roland J. Watson filed an approval of the settlement arrived at, from which, together with a petition filed in the matter of the estate of Candyce Watson, also on May 9, it appears that the two law suits had been settled for a total sum of $75,000.00. Of this, $5,000 was assigned as the value of the claim of decedent Candyce Watson, and in the order approving the settlement of the estate claim, signed by the Honorable Jack L. Green, an attorney's fee of one third and expenses was approved. Of the remaining $70,000, a sufficient amount was assigned to the claim of George E. Ross and Myra Ross to refund to them the funeral expenses which they had paid in the sum of $1,152.63, and the approval of the

settlement signed by Roland Watson indicates that the balance, after deduction of attorney's fees, which would accrue to the two minors was the sum of $43,627.80. On the same day, the Honorable Jack L. Green impliedly approved these figures by issuing his order appointing Ross and Watson as joint guardians and fixing bonds in the amount of $45,000.00 each. Each of the guardians qualified and letters of guardianship issued. Subsequently the proceeds of the settlement accruing to the minors were deposited in separate accounts for each of the minors, in each of two savings and loan associations in Missoula, resulting in four accounts, each within the insurance limits of the Federal Savings & Loan Insurance Corporation, and such accounts are there to this day. * * *

"With the children thus having guardians legally appointed over their estate, it is clear that nothing more than personal custody was involved in the proceedings pending before Judge Freebourn. Further, Roland Watson had agreed in his approval of the settlement, dated May 9, that George Ross might take charge of the funds, placing them in trust accounts in the savings and loan associations. * * * The possibility existed, of course, that custody of the children might carry with it the right to obtain the expenses incurred in raising the children out of the funds acquired by them in the litigation.

"Returning to the custody action, the motion for new trial filed by Ross through his counsel was supported by the affidavit of George E. Ross, and to this motion and affidavit, Roland filed his counter affidavit on June 13, 1967, in which he contended that no new evidence was really involved in plaintiff's motion, notwithstanding the affidavit of Ross. There the matter rested, with no date having been set for hearing of the motion, but with an affidavit of disqualification having been filed against the Honorable James D. Freebourn.

"Under these circumstances, assuming the validity of the affidavit of disqualification, it becomes the duty of the district judge in whose court, or whose department, the mat-

ter is pending, to take cognizance of the situation, and call in a new judge, fixing a time for hearing, or for other disposal of the motion. Fuller v. Gibbs, 122 Mont. 177, 199 P.2d 851. A reasonable time is allowed in which this may be accomplished, of course, but the district judge having this responsibility is required to proceed in good faith and without unreasonable delay. Failure to do so gives rise to a proceeding in mandamus. State ex rel. Coleman v. District Court, 120 Mont. 372, 186 P.2d 91.

"A matter of a week does not seem to be an unreasonable time. Within that week, and in the early morning hours of June 17, 1967, Roland J. Watson, to whom Judge Freebourn had confided custody of the children, was killed in an automobile accident. At the time, he had been married less than sixty days to Janice Maxine Joseph. The death of a party to whom the custody of minor children has been confided constitutes such a change of circumstances as to require reassessment of the custody problems. June 17 was a Saturday. On June 19 an order was issued and filed by the Honorable Emmet Glore, in whose department the matter was pending, and who had previously 'deemed' himself disqualified without an affidavit having been filed, but who retained jurisdiction for purposes of settling the calendar and calling in a new judge, in which order the death of Roland was noted, as was also the affidavit of disqualification filed against Judge Freebourn. This order transferred the custody of the children, pending the final disposition of the matter, to Mr. and Mrs. Ross, set the hearing on further custody (not mentioning the technicality of the motion for new trial) for Wednesday, June 28, 1967, and called in the Honorable W. R. Flachsenhar to assume jurisdiction. The space provided for Judge Flachsenhar to indicate his acceptance of jurisdiction remains unfilled. * * *

"It was later withdrawn under date of June 27 in a minute entry, because Judge Flachsenhar had never been formally called and the order had never been served, and further that

it was superseded by an order in a different case, number A10242, hereinafter referred to.

"Also on Monday, June 19, there was filed on behalf of Janice Maxine (Joseph) Watson, the second wife of Roland, a petition for appointment of guardian, which was assigned the court number A10242. In probate matters, the district court for Missoula County is not departmentalized, so that any judge to whom the matter is brought may act. This petition sets forth that petitioner is the surviving wife of Roland Watson, that Roland had been granted custody of the two children in the order of Judge Freebourn dated May 25 and that Roland had been killed on June 17. The petition also stated that it was necessary and convenient that a guardian be appointed to the persons and estates of the minor children, and requested such appointment. In view of the fact that the same district court had already appointed guardians of the estates of the two minor children, it was clear at the time this petition was filed that it could involve nothing but guardianship of the persons of the children, a term which to all practical purposes is synonymous with custody, which was already before the court in another suit in which a motion for new trial was pending. The filing of this petition was therefore superfluous, and it was clearly subject to the objection that another action was pending covering the same subject matter, although there are some subtle distinction between guardianship of the person of a child, and custody of the same child.

"Notwithstanding these considerations, an order was entered by Judge E. Gardner Brownlee on the same day, ex parte, not for the appointment of a guardian of the persons of the children, but giving custody of the children to the second wife, pendente lite the determination of the custody suit then pending. In view of the fact that no notice of this proceeding was given to counsel for Mr. and Mrs. Ross, and in view of the further fact that the order itself makes reference to the pending custody suit, number 30510, so that both court and counsel

were aware of its pendency, the entry of this order seems a little hasty. If, as has been suggested, the procedure was adopted of filing a petition for guardianship and receiving an order granting temporary custody because the second Mrs. Watson was not a party to the custody action, it would appear that the preferable procedure would have been to file a petition to intervene directly in the custody suit. And in any event, since the custody suit was in the department of Judge Glore, who that day was on the bench in a criminal action, and later in the day issued the order hereinabove referred to which was later revoked, due caution should have suggested referring the matter to the judge already concerned with the matter involved in the petition. In the light of subsequent developments, this order is moot, but it does seem to point up either a deficiency in the court rules of the fourth judicial district which permits all three judges concurrent jurisdiction in probate matters, or a failure to observe the amenities that would necessarily flow from the existence of such a rule.

"Upon obtaining information of the entry of this order in the second guardianship proceeding, counsel for Mr. and Mrs. Ross filed a rather remarkable document. Entitled a 'Motion to Dismiss,' it purports to be filed on behalf of the above-named defendant, (no defendant being named) and asks dismissal of the action because the complaint (there being no complaint) fails to state a claim against the defendant (there being none), and on the further ground that there was another action pending. Accompanying this motion there was also filed an affidavit of disqualification against the Honorable E. Gardner Brownlee. This affidavit, too, is in the words of the statute, and was filed on the day following the entry of the order above referred to. It does not appear that any action was ever taken on the so-called 'Motion to Dismiss.'

"In the custody action, Number 30510, on June 21, there was filed a praecipe, signed by counsel for Roland Watson, who at the time was deceased, indicating the withdrawal

of counsel who had previously represented the defendant, and requesting the entry of the name of Anthony F. Keast as the new attorney for the defendant. While at common law the death of a client terminated the attorney-client relationship, in Montana, section 93-2101, R.C.M.1947, provides otherwise. * * * On the same day Mr. Keast filed a motion resisting the affidavit of disqualification of Judge James D. Freebourn, and also setting out the entry by Judge Glore of the order calling in Judge Flachsenhar, hereinabove referred to, and designating both the affidavit of disqualification and the order by Judge Glore as void ab initio, but setting forth no reasons why this was so. This motion then requests that Judge Freebourn hold a hearing on the motion for new trial and dispose of it. Notice of time and place of said hearing was given by Mr. Keast, the same being set in the notice for Thursday, June 29, at 10 o'clock a. m. There is no order by Judge Freebourn setting the matter for hearing. Following this notice, Messrs. Wooten & Kidder once again filed an affidavit of disqualification of Judge Freebourn, and again the affidavit is in the words of the statute.

"Notwithstanding these two affidavits of disqualification, the matter came on for hearing on June 29 before Judge Freebourn and the minutes indicate, and a formal order filed July 6, 1967 confirms, that Judge Freebourn granted the motion of Anthony F. Keast to serve as counsel for the defendant, notwithstanding the fact that the defendant was deceased; that the affidavits of disqualification of Judge Freebourn were set aside, notwithstanding the fact that yet a third such affidavit was filed on June 29, that defendant's motion to quash Judge Glore's order of June 19 as void ab initio was granted; that defendant's motion to resist the subsequent affidavit of disqualification was granted, and the same was quashed; that the court took judicial notice of the order in guardianship file number A-10242 granting temporary custody to the second Mrs. Watson, and that the motion of the Rosses for a new trial

was denied, together with their motion for care, custody, and control of the minor children. Since this order was entered squarely in the teeth of three affidavits of disqualification, it becomes necessary to consider the power of a district court to overrule, quash, or ignore such an affidavit. * * *

"It has long been the rule in Montana that an affidavit of disqualification may be filed with effect at a time when a motion for new trial is pending. As early as 1905, in an opinion by Chief Justice Brantly in State ex rel. Carleton v. District Court, 33 Mont. 138, 144, 82 P. 789, the following language was used:

" '* * * The word "motion" seems to have been inserted purposely, to indicate that it was the intention of the legislature to allow the litigant to work the disqualification at any time before the time for trial on the merits, and further, at any time before a hearing on a motion in the progress of the case which involves a final adjudication of the rights of the parties upon that particular branch of the case. To illustrate: that it might be filed at any time before the hearing of a demurrer or motion to strike, or motion for judgment on the pleadings, or trial on the merits, or a hearing on motion for a new trial, or a motion to set aside a default, or the like, but not in any of these instances, on the day of the hearing or during its progress. * * *' "

"In 1909, in a case where the presiding judge disqualified himself at a time when a motion for new trial was pending, and the successful litigant objected to his doing so and calling in another judge, the Supreme Court recognized the Carleton decision and held:

" 'In this state a party has no absolute right to have his motion for a new trial passed upon by the judge who tried the cause. State ex rel. Carleton v. Dist. Ct., 33 Mont. 138, 82 P. 789.' " Hill v. Nelson Coal Company, 40 Mont. 1, 104 P. 876.

"Again, in Russell v. Sunburst Refining Company, 83 Mont. 452, 461, 272 P. 998, decided in 1928, where a disqualifying affidavit had been filed against the presiding judge while a

motion for a new trial was pending, the court used the following language:

" 'A motion for a new trial must be submitted to, heard and determined by the court and not by the judge thereof. When Judge Horsky appeared and assumed jurisdiction of the cause he became vested with all the power and authority over the same which a judge of that court theretofore possessed. In the settlement of the bill of exceptions the plaintiff had elected, as was his right, not to have the same prepared, allowed or settled until after the decision on his motion for a new trial.' "

"Thus the law in Montana at the time the motion in the present case came on for hearing, was to the effect that such an affidavit was proper after the filing of a motion for new trial and before hearing on the merits thereof.

"The wording of our disqualification statute, section 93-901, R.C.M.1947, as amended, is to the effect that it is the filing of the affidavit which works the disqualification, and not the truth of the contents thereof. If the affidavit is in the words of the statute, and is properly verified, the judge against whom it is filed is without jurisdiction to consider its contents, but must simply accept the fact of the filing of the affidavit, and step aside. In State ex rel. Grogan v. District Court, et al., 44 Mont. 72, 75, 119 P. 174, we find the following language:

" 'It cannot, we think, be controverted that the affidavit filed in the district court was sufficient to work a disqualification of Judge Smith and deprive him of jurisdiction in the case of Cline v. Grogan et al. Under the statute (Rev.Codes, sec. 6315) a disqualification is wrought by the filing of an affidavit imputing bias and prejudice to the presiding judge at any time before the day fixed for the hearing. The imputation may be made in the language of the statute, and proof of facts showing actual bias and prejudice is not required nor permitted. (State ex rel. Carleton v. District Court, 33 Mont. 138, 82 P. 789).' "

"It is to be observed at this point that the judgment against which the motion for new trial was directed was filed on May 29, 1967. The hearing on the motion took place on June 29, 1967. This being more than ten days after the filing of the original judgment, the provisions of Rule 59(d) do not appear to be involved. [Court Note: For cases involving Rule 59(d) see State ex rel. Bellon v. District Court, 140 Mont. 447, 373 P.2d 314; State ex rel. Cline v. District Court, 142 Mont. 278, 384 P.2d 490; and State ex rel. Peery v. Dist. Ct., 145 Mont. 287, 400 P.2d 648.]

"It would thus appear that Judge Freebourn was without jurisdiction to enter his order of June 29, 1967, filed July 6, 1967. Certain other facets of the situation confronting Judge Freebourn, however, must be considered. As we have seen above, when the matter came on for hearing on June 29, Roland Watson, in whom custody of the minor children had been placed by the order of May 29, was dead. Since the very nature of the custody of children is such that it cannot be exercised by a deceased person, it was evident that custody of necessity had to be transferred. The only other persons before the court were the plaintiffs in the action, Mr. and Mrs. George Ross. Since the court had already found them to be fit and proper persons in its judgment of May 29, and since they were blood relatives, it would appear that they would be the ones to whom custody of the children should be confided. To award such custody to any other person or persons would at the very least require an investigation into the fitness of such person or persons. The provisions of section 91-4515, R.C.M.1947, and particularly subdivision 3 thereof, would seem to be controlling. It provides as follows:

" '3. Of two persons equally entitled to the custody in other respects, preference is to be given as follows:

" 'First—To a parent.

" 'Second—to one who was indicated by the wishes of a deceased parent.

" 'Third—To one who already stands in the position of a trustee of a fund to be applied to the child's support.

" '—Fourth—To a relative.'

"Without a new trial, therefore, the custody of the children could go only to Mr. and Mrs. Ross. They qualify under two of the four provisions of subdivision 3, and only three of those sections could be applicable to the present case. The new trial should therefore have been granted, although as we have seen, the disqualification of Judge Freebourn effectively prevented action on his part. If, as has been suggested, the real contending party against the Rosses is the second wife of the deceased Roland Watson, then it would be necessary, if she is to be heard at all, that a petition for leave to intervene be filed on her behalf, and if she has testimony to offer under the second proviso of subsection 3 of section 91-4515, it can be heard.

"Accordingly, the entire matter should be remanded to the district court, in the department in which it was originally filed, and the presiding judge in that department should call in a new judge from outside the district who can then entertain a petition for leave to intervene, and if sufficient reason appears to grant the same, hear the testimony offered in the support of the desire of the second wife to have custody. * * *

"One matter remains. In cause number A10204, the first guardianship proceeding, in which, as we have seen, George E. Ross and Roland J. Watson were appointed and qualified as co-guardians, the funds accruing from the settlement of the damage actions were by them deposited in the two savings and loan associations in Missoula. These funds were received May 9, 1967, or shortly thereafter, as appears from the record. Under the provisions of section 91-4906, R.C.M. 1947, it then became the duty of the guardians, in this case the survivor, to file within three months, an inventory and appraisement of the property coming into their possession as guardians. This has not been done. By August 9, 1967, the date upon which such inventory was apparently due, the par-

ties were already before this court, a fact which may have caused the necessity of the inventory to be overlooked. This may extenuate, but does not excuse, the failure.

"As a result of the neglect, an order was issued on August 19, 1967, by the Honorable E. Gardner Brownlee, citing the surviving guardian to appear and account for the funds. It appears that the order was issued on the court's own motion, no one having filed an application for such an order. It is couched in language which indicates dissatisfaction with the attorney's fees received by counsel for the plaintiffs in the damage actions, and which also indicates that the issuing judge has probably pre-determined the matter. * * *

"The order appointing guardians was issued by the Honorable Jack L. Green. * * * It is therefore recommended that the surviving guardian be ordered to file his inventory and appraisement, and opening accounting with reference to attorney's fees, and that the same be considered * * * with an appropriate order to be * * * entered.

"In the matter of the estate of Candyce Watson, publication of notice to creditors has been given and appraisers appointed. Time for filing claims expired September 25, and the matter is therefore in condition for closing in the near future. Doubtless the comments above, with reference to the guardianship, will be sufficient to result in prompt action in the estate matter.

"It is therefore recommended as follows:

"1. That in cause 30510, the custody suit, the orders entered by Judge Freebourn, after disqualification, be set aside, a new trial granted, and the case be remanded with instructions to the judge in whose department the case originally fell, and none other, to call in an outside judge to hear the matter on the basis of the observations hereinabove contained;

"2. That cause number A10242 be dismissed as superfluous;

"3. That in cause number A10204, the guardian be required to account as hereinabove set forth;

"4. That in the other consolidated cases, because they are either concluded or moot, no action be taken."

The findings and recommendations above set forth are hereby approved and adopted by this court, and by virtue thereof it is hereby ORDERED:

1. In cause 30510, Ross v. Watson, the orders entered by Judge Freebourn after his disqualification be, and they are hereby, set aside and held for naught;

2. In cause 30510, Ross v. Watson, a new trial is granted and the cause is remanded to the district court and to the judge in whose department the case originally fell, and none other, with directions to call in an outside judge to hear the matter in accordance with the views herein expressed;

3. That cause A10242, Guardianship of Roland Mark Watson and Darin Scott Watson, be, and it is hereby, dismissed;

4. That in cause A10204, Guardianship of Roland Mark Watson and Darin Scott Watson, the Guardian, George Edward Ross, be required to account, which accounting shall include a consideration of attorneys' fees, as hereinbefore set forth;

5. That we relinquish jurisdiction over all causes hereinbefore consolidated and return them to their respective courts.

6. In view of the situation in Missoula County of the Fourth Judicial District with respect to a lack of court rules relating to primary jurisdiction over probate and guardianship matters, as noted in the Special Master's Report, this court orders that within sixty days from the date hereof the judges of that district adopt an appropriate court rule for Missoula County to the end that a determination of primary jurisdiction can be made from the rule adopted, in other words, so that it can be determined at any given time from the rule itself which judge has primary responsibility and jurisdiction in a given probate or guardianship cause.

The clerk of this court is directed to forward certified copy of this order with each case file as it is returned to the district

court from which it came; and, further, copies of this order shall be transmitted to the four district judges and four counsel who were designated as "parties" in our previous order.