No. 81-527

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

SHERRIE HERRIG, KATHY HERRIG,
and PATTI   HERRIG,

Plaintiffs and Respondents,

-vs-

HELEN M. HERRIG,

Defendant and Appellant.

Appeal from:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Skedd, Ashley, McCabe & Weingartner; J. C.
Weingartner, Helena, Montana

For Respondents:

Smith Law Firm, Helena, Montana

Submitted on Briefs:  April 1, 1982

Decided:   July 12, 1982

Filed: JUL 12 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant appeals from summary judgment in this action for enforcement of divorce decree in the First Judicial District Court, Lewis and Clark County. We affirm the District Court.

Defendant presents the following issues to this Court for review:

1. Whether the information contained in the deposition of the husband's attorney was inadmissible as violative of the attorney-client privilege.

2. Whether the provision in the divorce decree requiring the father to maintain a life insurance policy for the benefit of his children was valid and within the power of the District Court to order.

Charles and Betty Herrig were divorced on February 24, 1972. The three minor children of the marriage remained with their mother, who received $50 per child per month in support, payable until each child reached her majority. The divorce decree also provided, in pertinent part:

> "The defendant [husband] shall retain Twenty-two Thousand Five Hundred Dollars ($22,500.00) life insurance on his own life, naming his children as beneficiaries thereof. . ."

Charles Herrig carried life insurance with Metropolitan Life Insurance Company, through his employer, Montana Power Company. The policy was worth $22,500 at the time of the divorce.

Charles Herrig remarried, and on February 26, 1975, changed the beneficiary on his Metropolitan Life Insurance policy, designating his second wife, defendant Helen Herrig, as sole beneficiary. On October 27, 1979, Charles Herrig died. At the time of his death, only one of the three

-2-

children from his marriage to Betty Herrig was still under 18 years of age. The value of his life insurance policy was $50,000. In November of 1979, defendant claimed, and received, the entire $50,000 from Metropolitan Life.

Plaintiffs, Charles Herrig's three children from his first marriage, filed suit against defendant on August 4, 1980, seeking recovery of $22,500 from the proceeds of the insurance policy, plus interest.

On November 3, 1981, following hearing on plaintiffs' motion for summary judgment, the District Court granted the motion. Defendant appeals to this Court.

I.

During discovery, plaintiffs deposed the attorney (Sternhagen) who had represented Charles Herrig in the 1972 divorce action. Defendant objected to the use of the deposition and certain papers from the Herrig divorce file, arguing that the information therein was protected by the attorney-client privilege and could not be considered in this action.

The District Court in its findings of fact and conclusions of law entered November 2, 1981, stated:

> "Because of Mr. Sternhagen's uncertainty regarding Mr. Herrig's intention, this deposition does not support either plaintiffs' contention that the daughters were to receive the insurance proceeds no matter what, or defendant's contention that Herrig wanted to retain the right to change the beneficiary on the policy. Therefore, this deposition has not been used by this Court to discern Mr. Herrig's intent concerning the disposition of the insurance proceeds."

However, the order included extensive reference to and reliance upon the divorce file submitted with Sternhagen's deposition which leads us to conclude that the District Court did, in some degree, rely upon the challenged information. Thus, the question remains whether evidence, which could be barred by the attorney-client privilege during the client's

lifetime may be disclosed after the client's death.

The parties do not dispute that the pertinent information in Sternhagen's deposition as well as his file on the Herrig divorce could have been barred during Herrig's lifetime, as work product or privileged communication. But defendant argues that section 26-1-803, MCA, read together with section 37-61-401(2), MCA, indicates the intent of the legislature to extend the attorney-client privilege beyond the death of the client. Those sections provide:

> "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional employment." Section 26-1-803, MCA.

> "The death of a party to an action or proceeding does not revoke the authority of his attorney of record in said action or proceedings but the authority of the attorney is continued in all respects the same and with like effect as it was prior to the death of such party until such attorney shall withdraw his appearance in said action or proceeding or some other attorney shall be substituted for him or his authority shall be otherwise terminated and entry thereof made to appear in the record of such action or proceeding." Section 37-61-401(2), MCA.

Defendant further argues that because the deceased client can no longer contradict his attorney's disclosures, it is crucial that the privilege be applied, to prevent the attorney from disclosing evidence which can be used against the client's estate.

Plaintiffs argue that the action is not against the estate of Charles Herrig, but against defendant as constructive trustee, to recover money from her which they claim was equitably assigned to the children.

Plaintiffs also point out that section 26-1-803, MCA, has never been construed by this Court where the client is deceased. They argue that defendants have misapplied section 37-61-401(2), MCA, which, according to plaintiffs, does no

-4-

more than continue the authority of an attorney to serve in a _pending_ _action_ after the death of his client. Plaintiffs cite State ex rel. Ross v. District Court (1967), 150 Mont. 233, 433 P.2d 778, as supporting the same limited extension of an attorney's authority beyond the death of his client.

Plaintiffs urge this Court to adopt the generally accepted exception to the privilege rule. In 81 Am. Jur. 2d, WITNESSES 211, §175, the general rule regarding duration of privilege is stated as follows:

> "Ordinarily, the protection given by the law to communications made during the relation-ship of attorney and client is perpetual, and does not cease with the termination of the suit, nor is it affected by the party's ceasing to employ the attorney and retaining another, or by any other change of relation between them, or by the death of the client. The seal of the law once fixed upon them remains forever, unless removed by the party himself in whose favor it is there placed. Some privileged communications, however, may lose their privileged character by the lapse of time. That which may be confidential at one time may not be so at an after time. Thus, directions to an attorney to make a certain contract are a confidential communication be-fore but not after the contract is made. And while an attorney cannot be compelled to dis-close the contents of an answer in equity be-fore it is filed, he may be afterward.

> "The _privilege_ _does_ _not_ _apply_ _in_ _litigation,_ _after_ _the_ _client's_ _death,_ _between_ _parties,_ _all_ _of_ _whom_ _claim_ _under_ _the_ _client,_ _as_ _where_ _the_ _question_ _is_ _as_ _to_ _who_ _shall_ _take_ _by_ _succession_ _the_ _property_ _of_ _the_ _decedent._ _And_ _so_ _generally,_ _where_ _both_ _of_ _the_ _parties_ _to_ _a_ _lawsuit_ _claim_ _under_ _a_ _deceased_ _client,_ _neither_ _can_ _assert_ _the_ _privilege_ _against_ _the_ _other._ _This_ _rule_ _has_ _been_ _applied_ _where_ _the_ _heirs_ _of_ _a_ _grantor_ _sued_ _the_ _grantee_ _of_ _a_ _deed_ _for_ _recovery_ _of_ _the_ _property_ _conveyed_ _by_ _the_ _decedent._" (Emphasis added.)

Plaintiffs refer us to McSpadden v. Mahoney (1967), ____ Okla. ____, 431 P.2d 432, where the Oklahoma Supreme Court held that both the physician and the attorney for deceased donor were competent to testify in an action by the deceased donor's heirs at law against the donee to set aside inter

-5-

vivos gifts of real property. The court made the following statement concerning the attorney-client privilege after death of client:

> "There can be no doubt that the testimony of an attorney concerning communications with his client is not admissible against the client where the privilege against such testimony is properly invoked. Jayne v. Bateman, 191 Okl. 272, 129 P.2d 188. The same rule applies to the testimony of a physician. St. Louis-San Francisco Ry. Co. v. Kilgore, Okl., 366 P.2d 936. But the privilege to exclude such testimony is not applicable in the instant proceedings. Here both parties are claiming under the deceased, the plaintiff as an heir and devisee and the defendant as a grantee and assignee. In Gaines v. Gaines, 207 Okl. 619, 251 P.2d 1044, a case in which both parties were claiming property under an assignment from the deceased, this court held:
>
> "'The rule of privilege between attorney and client does not apply in litigation, after the client's death, between parties, all of whom claim under the same client.'
>
> "This exception has often been applied in cases in which heirs or devisees of the grantor sued the grantee of a deed for recovery of the property conveyed. (citing cases)." 431 P.2d at 440. (Emphasis added.)

Plaintiffs also rely upon Bergsvik v. Bergsvik (1955), 205 Or. 670, 291 P.2d 724, which considered whether or not testimony of an attorney for the deceased client should be admitted where the conversation with the deceased client and the attorney concerned the interpretation of a community property agreement. The community property agreement conflicted with the will, and the testimony of the attorney was necessary to clear up the conflict. The court, in response to the objections that such information was privileged between the attorney and client, responded:

> "[A]lthough the conversations might have been privileged during the lives of the parties, after the death of both of them the privilege is removed. The rule is stated in Corpus Juris in this way:

-6-

> "'It is generally considered that the rule
> of privilege does not apply in litigation,
> after the client's death, between parties,
> all of whom claim under the client; and, so,
> where the controversy is to determine who
> shall take by succession the property of a
> deceased person and both parties claim under
> him, neither can set up a claim of privilege
> against the other as regards the communica-
> tions of deceased with his attorney.' 70
> C.J. 438, Witnesses, §587." 291 P.2d at 731.

In Tanner v. Farmer (1966), 243 Or. 448, 414 P.2d 340, the Oregon Supreme Court allowed deceased wife's attorney to testify that the wife had intended to divorce her husband and cut him from her will. The court said:

> "The Uniform Rules of Evidence propose that
> the privilege shall not extend 'to a communi-
> cation relevant to an issue between parties
> all of whom claim through the client, regard-
> less of whether the respective claims are by
> testate or intestate succession or by inter
> vivos transaction.' Rule 26(2)(b) Uniform
> Rules of Evidence [now Rule 502(d)(2) Uniform
> Rules of Evidence; not included in Montana
> Rules of Evidence]. This is in keeping with
> the Bergsvik decision and with the rule follow-
> ed by the other courts. See McCormick on
> Evidence (1954) §98, pages 199,200." 414 P.2d
> at 342.

While the cases relied upon by plaintiffs are not identical factually to the present case, we find plaintiffs' argument persuasive. In the present case, all the parties are next of kin to Charles Herrig and claim an interest in his life insurance policy. The provision in the divorce decree requiring that the insurance policy be maintained for the benefit of plaintiffs conflicts with the amended provision in the policy itself naming defendant as sole beneficiary. In order to determine whether the insurance provision in the divorce decree was something desired or agreed to by Charles Herrig or was something which was imposed upon him by the court, it is necessary to consider Sternhagen's deposition, which indicates Charles Herrig's intent.

This Court has not considered whether section 26-1-803,

MCA, extends the attorney-client privilege beyond the client's death; we now hold that, under the facts of this case it does not; Sternhagen's deposition was admissible. We hereby adopt the above exception to the general attorney-client privilege rule; where both parties to a lawsuit claim under a deceased client, neither can assert the attorney-client privilege against the other. The District Court did not err in considering Sternhagen's testimony and those papers which were part of the Herrig divorce file.

## II.

Defendant argues that the District Court in 1972 was without power to require Charles Herrig to maintain his life insurance for the benefit of his children, particularly, where there was no provision for the termination of the requirement as to each child when she reached her majority. Defendant relies upon the following rules for support:

(1) A divorced parent has no greater obligation to his children than a non-divorced parent. Clavin v. Clavin (1977), 238 Ga. 421, 233 S.E.2d 151.

(2) A parent's legal obligation to support his children ends with their emancipation--in Montana, at 18 years of age. Chrestenson v. Chrestenson (1979), 180 Mont. 96, 589 P.2d 148.

Defendant concedes that a mutual separation agreement or property settlement agreement which "clearly and unmistakably" provided for insurance maintenance would be enforceable. But defendant points out that "no property settlement agreement was ever signed or filed with the [District] Court," and argues that, even if it had been, such an agreement should be enforceable as to each child only until that child reached majority. Finlay-Wheeler v. Rofinot (1976), 276 Or. 865, 556 P.2d 952.

-8-

Defendant argues, too, that, apart from the question of the admissibility of the deposition of Charles Herrig's attorney, the attorney's speculations about Charles Herrig's intent a decade earlier are not very conclusive evidence.

Defendant has raised a number of questions which are not applicable here. In Chrestensen, supra, this Court did not hold that all legal obligations cease when the child reaches majority, but that the legal obligation to provide child support ceases at that time. Justice Sheehy, in a special concurrence, recognized "that the parties could agree to an obligation to support a child beyond the age of eighteen years." This is consistent with case law in other states, and is perfectly logical. Similarly, where there is no settlement agreement, a parent may, through his attorney, suggest to the court certain provisions for the benefit of the children which are agreeable to that parent. When the court accepts the parent's suggestions, and incorporates them into the decree, they are enforceable. In Clavin v. Clavin, supra, the court stated:

> "There is, of course, no question that a father may agree to provide life insurance for the benefit of his child. Such an agreement, if valid and incorporated in the decree, will be enforced. (Citations omitted.)" 233 S.E.2d at 152.

Here, the District Court judge acted upon the husband's offer to maintain his life insurance for his childrens' benefit. The return on the order to show cause dated November 15, 1971, shows that the husband, whose take-home pay was approximately $425.00 per month declared himself incapable of paying $300.00 per month child support. He offered instead to pay $50.00 per child per month ($150.00), and further stated:

"The defendant is also agreeable to keeping
the group life insurance policy of the Mon-
tana Power Company, defendant's employer,
in the amount of $22,000, but alleges that
the beneficiary provision on such policy
should be changed to retain the children of
the parties but to exclude the plaintiff."

The attorney's records and testimony support plaintiffs'

argument that the District Court did no more than incorporate

into the divorce decree a provision for the protection of

the children, suggested to the court by the husband.  The

District Court referred to those sections of the Herrig

divorce file which indicated Charles Herrig's intent to keep

up his life insurance for his children:

"Evidence of the existence of the oral property
settlement agreement, is found throughout the
court record of the Herrig divorce case, and
in the file kept on that case by William Stern-
hagen.  Documents in Sternhagen's file have
become a part of the record in the instant
action.

"In notes taken over the phone by William Stern-
hagen in a conversation with Charles Herrig on
about November 24, 1970, the following appears:

"'5.  MPC group life in.  $22,000-beneficiary
will be children'

"The next document in Sternhagen's file is more
notes.  At the top of the single page, he has
written, 'Maybe write to Kottas and make this
offer as the terms for a separation agreement.'
Written on that page is this notation:

"'Life Ins--$22,500 ben is wife-to be changed
to children---will keep up payments---right
reserved to change beneficiaries after youngest
child (12) becomes of legal age.'

"Attached to that page of notes is a letter to
Leo Kottas dated December 2, 1971, which pro-
poses terms for a separation agreement.  Item
number 3 reads:

"'3.  Mr. Herrig will keep up his life insurance
changing the beneficiaries to his children
reserving the right to change beneficiaries
if he so desires, but not until his youngest
child becomes of legal age.'

"A return on order to show cause was filed
December 15, 1971 by Mr. Sternhagen.  The life
insurance provision therein states:

"'4.  The defendant is also agreeable to keep-
ing the group life insurance policy of the Mon-
tana Power Company defendant's employer, in the

amount of $22,000.00, but alleges that the
beneficiary provision on such policy should
be changed to retain the children of the
parties but to exclude the plaintiff.' [see
above]

"In a post-trial memorandum, filed February
14, 1972, and prepared by defendant's attorney,
Mr. Sternhagen, he summarized Mr. Herrig's
testimony:

"'Mr. Herrig, in addition to the above, agreed
that he would continue to pay about $14 per
month for $22,500 insurance on his life and
that the children would remain beneficiaries
of this.' (emphasis added)

"In that memorandum was a section entitled
'Suggestions and requests for property settle-
ment.' Items 11. . .read[s]:

"'11. Mr. Herrig continue the life insurance
for his children in the total coverage of
$22,500 which is at a cost to him of $14 per
month.'"

These records were compiled during the 1972 divorce action.

Defendant's objection to Sternhagen's evidence, as being

unreliable due to the passage of years, is without merit.

This Court must determine whether summary judgment was

appropriate. The general rules governing summary judgment

were stated in Krone v. McCann (1982), ____ Mont. ____, 638

P.2d 397, 399-400, 39 St.Rep. 10, 13:

"Under Rule 56(c), M.R.Civ.P., a summary judg-
ment is proper only if the record discloses no
genuine issue of material fact and that the
movant is entitled to judgment as a matter of
law. (Cites omitted.) The party moving for
summary judgment has the burden of showing the
complete absence of any genuine issue as to
all facts which are deemed material in light
of those substantive principles which entitle
him to a judgment as a matter of law. (Cites
omitted.) Once the movant has established
that no material issues of fact exist, the
burden shifts to the opposing party to raise
an issue of fact. As we stated in [Rumph v.
Dale Edwards, Inc. (1979), ____ Mont. ____,
600 P.2d 163, 167, 36 St.Rep. 1022, 1026]:

"'While the initial burden of proof must attach
to the moving party, that burden shifts where
the record discloses no genuine issue of mat-
erial fact. Under these circumstances, the
party opposing the motion must come forward
with substantial evidence raising the issue

> [Citations omitted.] Once the burden has shift-
> ed, the party opposing the motion is held to a
> standard of proof which is as substantial as
> that initially imposed upon the moving party.
> [Citation omitted.]'"

Respondents' brief in support of their motion for summary judgment is adequately supported by reference to the above rule and case law interpreting it. The brief sets forth copious facts supporting respondents' argument that Herrig's clear and continuing intent was to maintain his life insurance policy for the benefit of his children. It points out the offer in Herrig's return on order to show cause, November 15, 1971, which stated that Herrig was agreeable to keeping the policy but that the beneficiary provision should be changed to retain the children.

Appellant's brief in opposition failed to raise any issue of disputed fact, or to argue that there was any genuine issue of material fact.

We find nothing in the record of the divorce itself or of this action to indicate that any property settlement agreement, oral or otherwise, had been reached between the Herrigs at the time of their divorce. But the record leaves no doubt that Charles Herrig intended his children to be the beneficiaries of his life insurance, and that he offered that benefit to the court in return for the court's lowering the requested $300/mo. total child support to $50 per child per month, or $150/mo.

The District Court never directly addressed the question of whether Herrig effectively contracted with the court to waive his right to change beneficiaries. But, the abundant evidence from the Sternhagen file, which is undisputed except for the question of its admissibility and the question of the duration of the waiver, adequately supports the District Court's conclusion that there is no genuine factual dispute over Charles Herrig's

intent to maintain the policy for his children.  It would
be unreasonable for this Court to render invalid or unenforce-
able, the provisions of a divorce decree offered by one party
and accepted by the trial court, although unsought by the other
party, when those provisions involve benefits to the children.
A parent who offers to put his children through college, for
example, rather than pay the entire amount of support sought
by the other parent should be held to that agreement once
it is incorporated into the decree.  Or a parent who offers
to pay medical/dental bills until his children are 21, rather than
pay full support asked until their majority, should not be
able to escape that bargain, once his offer has been accepted
by the court.

Here, Herrig offered to the court the life insurance
policy as trade for lower support.  The court accepted the
offer.  The record is clear and reflects no factual dispute
regarding that offer.  We find there is no genuine issue of
material fact as to Herrig's intent to maintain his life
insurance for his childrens' benefit.

The second factual question was whether Herrig intended to
retain the right to change beneficiaries

    (a)   From the time of the divorce.

    (b)   When his youngest reached majority.

    (c)   As to each child when she reached her majority.

    (d)   Never.

There is absolutely no evidence to support (a) or (c).
The insurance provision in the decree is meaningless if (a)
is found applicable; and the only argument in support of (c)
is that what appellant presents as the minority view (that
a parent can be required to maintain his life insurance for
his childrens' benefit), generally holds that the requirement

terminates upon the child's reaching majority. The minority view is not applicable here, where the decree is obviously not an imposition of the court's will upon Herrig, but rather an incorporation of Herrig's offer into the decree. A parent's legal obligation to support his children ceases with their majority, but the parent can agree to extend their support or benefits beyond that time. See Chrestensen concurrence, above. That obviously is what happened here.

If (b) and (d) are the only two legitimate offers, as indicated by the Sternhagen file, then the factual dispute is not material, since in either case, the $22,500 policy for all three children would be in effect at least until the youngest reached her majority, which she had not, at the time of Herrig's death.

Thus, although the District Court wrongly relied upon an apparently non-existent settlement agreement between husband and wife, the result was correct. There is no genuine issue of fact as to whether Herrig intended to maintain the policy for his children, and no issue of material fact as to when his right to change beneficiaries came into effect. This Court has often held that if the result reached by the trial court is correct, it will be upheld regardless of the reasons given for the conclusion. Steadman v. Halland (1982), ____ Mont. ____, 641 P.2d 448, 452, 39 St.Rep. 343, 347; Johnstone v. Sanborn (1960), 138 Mont. 467, 471, 358 P.2d 399, 401.

Here, Charles Herrig, through his attorney, clearly indicated to the trial court his willingness to keep up his life insurance policy in the amount of $22,500 for his children, at least until his youngest child reached her majority. The court incorporated that offer into the divorce decree; the provision is enforceable and may not be defeated by Herrig's subsequently naming his second wife sole beneficiary. We refer to Matter of Estate of

Lemer (S.D. 1981), 306 N.W.2d 244, a case factually similar to the case at bar, wherein the South Dakota Supreme Court stated:

> "[T]hough a beneficiary named in a policy which contains a provision reserving a right in the insured to change the beneficiary is without a so-called vested right in the policy, he may nevertheless become invested with equitable rights therein through a separate contract with the insured, and. . .such rights may prevail over the legal and equitable rights of one who has been subsequently substituted as the named beneficiary. (Cites omitted.)  That such an equitable right in the policy may arise from a settlement of property rights in connection with a divorce proceeding is not questioned. (Cites omitted.)"  306 N.W.2d at 245-246.

Here, although plaintiffs were never actually named beneficiaries, and their interest was created by agreement between the husband and the court, the incorporation of the husband's offer into the divorce decree created equitable rights in the policy, in the children.  Those rights prevail over the defendant's rights to the extent of the value of the insurance policy referred to in the divorce decree.

The District Court correctly granted judgment against defendant in the amount of $22,500.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-15-